**KINCAID ENTERPRISES, INC.,**
**(Respondent/Appellant),**
**Appellant,**

v.

**Herbert L. PORTER,**
**(Appellant/Respondent), Appellant.**

**KINCAID ENTERPRISES,**
**INC., Appellant,**

v.

**Herbert L. PORTER, Respondent.**

**Nos. WD 42970, WD 42971.**

Missouri Court of Appeals,
Western District.

June 25, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 30, 1991.

Application to Transfer Denied
Sept. 10, 1991.

Arthur A. Benson II and Jamie Kathryn Lansford, Kansas City, for appellant.

H. Kent Desselle, Independence, for respondent.

Before LOWENSTEIN, P.J., and SHANGLER and MANFORD, JJ.

SHANGLER, Judge.

The plaintiff Kincaid Enterprises brought a petition against the defendant Herbert Porter that alleged that the defendant breached the contract between them for the sale of a business. The petition alleged also that the defendant never in-

tended to honor the contract and that his representations to the contrary were fraudulent. The relief sought was actual damages for the breach of contract and actual and punitive damages for the fraudulent representations. The plaintiff tendered, and the court submitted, both theories of recovery, and the jury returned verdicts for the plaintiff on them both. One was for $35,000 for breach of contract, and the other was for $36,000 for fraudulent representation. A judgment for $71,000 was entered on the verdicts.

The defendant Porter moved for new trial or, alternatively, for judgment notwithstanding the verdict. The trial court sustained the motion for judgment notwithstanding the verdict as to the recovery of $36,000 for fraudulent representation, and sustained the judgment for $35,000. The defendant Porter and the plaintiff Kincaid each appealed the final judgment.[1]

### The Kincaid Appeal

The order of judgment notwithstanding the verdict, which both the plaintiff and defendant separately appeal, rests on determinations that, although the verdict for $35,000 for breach of contract and the verdict for $36,000 for fraudulent representation were each supported by substantial evidence, in combination they constituted "a double recovery of any actual damages proved" by the plaintiff Kincaid. It rests on the determination also that "it would be against the weight of the evidence to permit the verdicts of $35,000 and $36,000 each to stand" and for Kincaid to recover "a total judgment of $71,000." Accordingly, the court set aside the judgment for $36,000 for fraudulent representation notwithstanding the verdict, and overruled the post-trial motion as to the verdict for breach of contract.

█ A motion for judgment notwithstanding the verdict presents the same issue as a motion for directed verdict at the close of all the evidence: whether the plain-

1. The response to the points on the appeals implicates the interpretation of the order that adjudicated the post-trial motions of the defendant Porter into the final judgment of $35,000 for the plaintiff Kincaid. That order, in full text, is appended to the opinion.

tiff proved a submissible case. *Wells v. Orthwein,* 670 S.W.2d 529, 532[1,2] (Mo. App.1984). Rule 72.01(a) directs that "[a] motion for a directed verdict shall state the specific grounds therefor." A motion for directed verdict that does not conform to the rules presents no basis for relief in the trial court nor preserves the issue in the appellate court. *Christ v. Tice,* 578 S.W.2d 319, 322[3] (Mo.App.1979).

█ The motion for directed verdict at the close of all the evidence by the defendant Porter asserted:

1. That Plaintiffs [sic] petition fails to state the facts efficient [sic] to constitute a claim or cause of action against the Defendant upon which relief can be granted.

2. The evidence fails to establish or prove a *prima facie* case against the Defendant.

3. Under the law and Plaintiffs [sic] evidence, Plaintiff is not entitled to recover damages against the Defendant.

These are conclusions and bare generality, and not specific grounds as to why the defendant is entitled to relief and judgment by directed verdict. *McRaven v. F–Stop Photo Labs,* 660 S.W.2d 459, 460[1–3] (Mo. App.1983). They do not even suggest the oddity of a double recovery or any other definite ground sufficient to invoke either a directed verdict or a judgment notwithstanding verdict. It was error for the trial court to enter in favor of defendant Porter judgment notwithstanding the verdict of $36,000 for the plaintiff Kincaid on the claim for fraudulent representation.

█ Kincaid argues, moreover, that the order to nullify the verdict for fraudulent representation is no more valid as a judicial initiative reserved to the trial court over its judgment. The control by a trial court to vacate, reopen, correct, or modify its judgment is retained during the 30 day period after entry of judgment. The court of its own initiative during that period may order a new trial for any reason it might have granted a new trial on the motion of a party. Rule 75.01. After that period, the power of the court over its judgment is confined to the grant of relief sought by a party in the after trial motion and for the reasons presented in the motion. *Hopkins v. North Am. Co. For Life & Health Ins.,* 594 S.W.2d 310, 317[11, 12] (Mo.App. banc 1980). Judgment on the verdicts was entered on November 2, 1989. Judgment notwithstanding the verdict for fraudulent representation was entered on January 18, 1990, more than thirty days later. It is not only the lapse of time that conditions the authority of the trial court over its judgment under Rule 75.01, but also the nature of the control reserved to the court. The order to enter judgment notwithstanding the verdict for fraudulent representation was not effective as a judicial initiative under Rule 75.01 not only because of the elapse of more than thirty days, but because the entry of a judgment notwithstanding verdict is not an authority the rule confers.

█ Kincaid notes the anomaly of an order of judgment notwithstanding a verdict that the order nevertheless finds properly returned and supported by the evidence. Kincaid notes also the irregularity of a rationale that finds that the damages returned by the verdict on each separate claim are supported by the evidence, and yet in composite are excessive and against the weight of the evidence. It is enough to say again that a judgment notwithstanding the verdict determines that the plaintiff has not proven a *prima facie* case. *Wells v. Orthwein,* 670 S.W.2d at 532[1, 2]. A verdict that responds to an instruction that submits all of the necessary elements of the cause of action and is proven by evidence—as the trial court found as to both claims—is not vulnerable to adverse judgment. It is also enough to say that the corrective for a verdict that is against the weight of the evidence as excessive is an order for new trial, and not a judgment notwithstanding verdict. Rule 78.02; *Don Gatson & Son, Inc. v. Vic Koepke Excavating & Grading Co.,* 693 S.W.2d 850, 853[5] (Mo.App.1985). The motion of the defendant, in any event, contends neither that the verdicts are excessive nor that they are against the weight of the evidence.

The error the post-trial order undertakes to redeem is the redundancy of verdicts that return the same damages on the same evidence for the two separate wrongs. It is an irregularity, however, that the defendant Porter did not notice either by trial objection or in the post-trial motions for judgment or new trial. It is an irregularity, moreover, that was not amenable to correction at the initiative of the trial judge by judgment notwithstanding verdict under our procedures. Rule 75.01.

The appeal of the plaintiff Kincaid is sustained.

### The Porter Appeal

The essential facts of the transaction are related in *Kincaid Enters. v. Porter*, 758 S.W.2d 503 (Mo.App.1988), wherein we determined the breach of contract issue was submissible and reversed the judgment entered for the defendant Porter on a directed verdict. We repeat and amplify that recital of facts in order to better serve the issues this appeal presents. The facts are drawn in the manner most favorable to the Kincaid verdicts.

Kincaid and Porter were competitors in the business of providing ushers, ticket-takers and security personnel for public entertainment events in the metropolitan Kansas City area. In order to reduce the competition in the limited market for that service, on March 1, 1985, Kincaid Enterprises purchased from Herbert Porter, the business operated as a sole proprietorship, Porter Personnel Service. The contract called for the sale of the enterprise [exclusive of the "box-office" portion, ticket sales at fixed locations] as a "going concern, including the trade name, customer lists, contracts, uniforms, and employee list used by SELLER [Porter] in connection with the business." The contract contained a restrictive covenant which provided that for a period of three years from the date of the closing, Porter would not directly or indirectly engage in the usher service business in metropolitan Kansas City, except to continue to own and operate the "box office" portion of his business. Porter also agreed not to directly or indirectly request or advise any present or future clients to withdraw, curtail or cancel their business with Kincaid, or to disclose to any other person the names of the Porter clients, or to attempt to influence any Porter employee to terminate that employment.

The purchase price for the Porter business was $35,000. Of that amount, $6,000 was allocated to uniforms, $4,000 to goodwill, and $25,000 to the restrictive covenant. There was evidence that Kincaid did not receive all of the Porter uniforms [the only physical asset of the enterprise] that were due under the contract. There was evidence also that Kincaid did not receive use of the trade name, "Porter Personnel Services." Soon after the completion of the sale, rather, Porter told his customers that he was going out of business and that they would be contacted by the two services operating in the area. Porter also failed to assure customers that Porter Personnel would continue to provide service and people, and thereby destroyed the good will as well as the trade name Porter contracted to sell.

Nor did Kincaid receive an employee list for use in the service events. Those former Porter employees Kincaid was able to reach had already been told by Porter that he was going out of business and that two competing services would be in touch with them about future employment. Porter told them also—many of whom were black—that Kincaid did not hire blacks but that they could obtain work from Michael Jack. [In fact, Kincaid did hire black personnel.] Jack was former general manager for Kincaid and, as Kincaid then learned, was the other competitor in the field, under the name Event Staff Services. Kincaid observed Jack's employees wearing Porter uniforms the contract intended as assets to be delivered to Kincaid.

At the time of the sale, Porter had a contract with the Kansas City Convention Center. Porter informed the Convention Center General Manager, Langley, that Kincaid would take over that contract. Porter mentioned to Langley that another service was also available, and introduced him to Michael Jack. Jack had gone into

competition with Kincaid just before the purchase of the business from Porter. Porter also turned over to Jack some uniforms stored there, which had not been used for some time.

Jack testified that he received about two dozen uniform vests from Porter after the sale of his business to Kincaid. At about the same time, Porter gave Jack a list of the names of his former employees. Jack hired two former Porter supervisors from among them. The business became profitable, and after a year-and-a-half, Jack sold out to Contemporary Services Corporation.

At the time of the sale to Kincaid, Porter also provided services for the Lyric Opera and Kansas City Symphony through its Computer Systems Manager, Sutherland. Porter told him of the sale. Porter made no attempt to assure Sutherland that the same Porter Personnel Service employees would be working the events. Somerville, the manager for Kincaid [and Jack's successor there], came by to ask Sutherland about providing services for the opera season about to commence. Sutherland employed Event Staff Services, the enterprise owned by Jack. The reason was that Jack had employed former Porter personnel, and the important concern for Sutherland was the "continuity of people who knew the theater." Sutherland knew the work of these former Porter personnel and was very satisfied with them.

The defendant Porter contends that neither the breach of contract nor the fraudulent representation claim was proven *prima facie*, and so neither was submissible. The defendant also argues, and pointedly, that the element of damages was not fully proven.

The claim for fraudulent representation was submitted to the jury by verdict di-

rector Instruction 12.[2] Porter does not contend that the instruction is imperfectly formulated as a submission for fraudulent representation. *See Sofka v. Thal*, 662 S.W.2d 502, 506[2] (Mo. banc 1984). Porter argues, rather, that submission fails because there is no evidence he misrepresented or authorized the representation of any fact other than the terms of the sale agreement as executed. The negotiations were conducted entirely between his attorney McMahon and Kincaid. Porter admits that "McMahon was the attorney during the negotiations," but contends there was no evidence that McMahon was authorized to agree to any term or to make any representation binding on Porter other than those contained in the final writing. The contract, for instance, specifically numbered the coats and vests purchased, and Kincaid received that number. In order to bind Porter to the inference that all of the Porter Personnel uniform inventory was intended by the negotiations to pass to Kincaid under the contract—the argument goes—the evidence must show "the agency relationship," which Kincaid "failed to either plead or prove."

The authority and agency of McMahon to negotiate the contract for Porter was never in issue. The contention then as now, rather, is that an agency to negotiate a contract does not imply authority to bind the principal by representations other than those embodied in the agreement negotiated. It is an argument, in effect, that unless there is evidence that the agent had authority to commit the fraud, the case is not proven. *Tietjens v. General Motors Corp.*, 418 S.W.2d 75 (Mo.1967) at 84[5] lays down the definitive rule:

> There is a wide distinction to be drawn between the authority of an agent to commit a fraudulent act and his authori-

**2.** Instruction 12 was among the package of instructions that the jury was informed applied to the claim for fraudulent representation, and included general Instructions 1 through 5 and 11 through 14. The court also gave Instruction 10, which withdrew from the jury from the *claim for breach of contract* the evidence concerning any negotiations or action taken by the parties prior to March 1, 1985. That evidence was the subject of the claim for fraudulent representa-

tion. It is mentioned because Porter's brief seems to suggest that since there was no evidence of misrepresentations *after* the sale on March 1, 1985, Instruction 10 somehow impinged upon the jury adversely. Its purpose was to guide the jury to fair verdicts on the separate claims.

Instruction 12 is given in full text in Appendix B to this opinion.

ty to transact the business in the course of which the fraudulent act is committed.... Tested by reference to the intention of the principal, neither negligence nor fraud is within the "scope of agency;" but tested by the connection of the act with the property and business of the agency, fraud in taking the very property is as much "within the scope of the agency" as negligence in allowing others to take it. The proper inquiry is, whether the act was done in the course of the agency and by virtue of the authority as agent. If it was, then the principal is responsible, whether or not the act was merely negligent or fraudulent.

*See also* Restatement of Agency §§ 160 257(c) (1933). The representations that are the basis of the Kincaid claim were made in the course of the negotiations by virtue of the acknowledged authority of the agent to negotiate. There was no need to plead an authority already acknowledged. *Elliott v. St. Louis S.W. Ry.*, 487 S.W.2d 7, 16[11] (Mo.1972).

There was other, and more direct, evidence from which the jury could infer that the terms and representations made by the agent attorney during the negotiations were those of Porter himself. Kincaid testified that from the first Porter refused to be at the negotiations, but used attorney McMahon for that purpose. It became a "back and forth" discussion over several months. Each term proposed by Kincaid was taken back to Porter for counterproposal or approval—as to the uniforms, company name, and the business. It was Porter himself, however, who "made available" the uniforms for inventory by Somerville, then general manager for Kincaid. Kincaid was told that "the uniforms that Mr. Porter had were at his house," where Porter kept his office. Somerville counted the uniforms shown him by Porter. That is how they "ended up with the final numbers." These uniforms were needed in order to compete for the business that Porter served because they were of the kind specifically delineated for use in the contracts with his several clients. The jury could have found from this evidence that Porter represented to Kincaid that the disclosed inventory was the only supply of uniforms the business owned. The jury could have found from the evidence that Porter almost immediately thereafter gave a number of uniforms to Jack, Kincaid's only other competitor for the service business, that Porter personally misrepresented the fact of the numbers of uniforms owned by the business.

The arguments presented do not show that the denial of tendered Instruction C was error.

The contention that the breach of contract claim was not submissible is also denied. That claim was submitted by Instruction 7.[3] The evidence of the transaction has been fully recounted. Each proposition submitted to be found by the jury for verdict was supported by the evidence.

There remains the issue of damages. Porter argues that there was evidence only of the loss of gross profits, so that that element of both the breach of contract and fraudulent representation claims went unproven and entitled him to a directed verdict at the trial or a judgment notwithstanding the verdict after trial. Our opinion decides that the motion of the defendant for directed verdict at the close of all the evidence was not an effective pleading. It neither presented nor preserved the sufficiency of the Kincaid evidence as submissions for breach of contract or for fraudulent representation. *Christ v. Tice*, 578 S.W.2d at 322.

Porter argues nevertheless that the damages were not proven because the records used for that purpose intermixed entries, both qualified and unqualified, and so misled the jury to an improper verdict by evidence for which there was no probative foundation. Porter complains that the denial of a mistrial was error that can be corrected only by a new trial. It is a contention of error properly preserved and so for our consideration, although a review hampered by an argument without tran-

---

3. The full text of breach of contract Instruction 7 is given in Appendix C.

script reference to the source of the evidence. *See* Rule 84.04(h).

The complaint relates to the records produced by Karen Ansen as director of operations for Contemporary Services Corporation, like Kincaid, a personnel service company. Contemporary Services Corporation bought out the Michael Jack personnel service operation, Event Staff Services. The invoices of events worked by Event Staff Services passed to Contemporary Services. Those records kept the "manpower used and the times, the hours worked, rate and the total." Contemporary Services thereafter continued that mode of record-keeping.

 It was the theory of the Kincaid pleading that the failure to receive all of the uniforms owned by the Porter business, and the use of the *Porter Personnel Services* trade name and good will, and of the employee list, and the client list caused him damage. In order to prove that damage, Kincaid presented the evidence, already recounted, whereby the disregard by Porter of these promised undertakings resulted in the realignment of Porter clients and employees with Jack and other competitors, instead of Kincaid. Contemporary Services succeeded to Jack and his Event Staff Services in the spring of 1986. The witness, Karen Ansen, identified exhibit 16—a box full of invoices—as records of the money billed for shows done by Contemporary Services since the spring of 1986. Kincaid prepared a summary of those exhibit invoices which was received as exhibit 17. Kincaid had testified that Contemporary Services succeeded to the same clients that Jack had before. Kincaid calculated from the summary that Contemporary Services had furnished 27,593 hours of services to those clients. Kincaid then applied to the summary the basic rate of $5.46 per hour his service charges, a flat rate allocated to overhead, a payroll and insurance surcharge and other expenses, to derive the profit of $1.96 per hour. The calculated profits lost from the services reflected in the exhibit 16 invoices was $54,082,28. It was then discovered that the box of invoices contained both Event Staff Services as

well as Contemporary Services invoices and that exhibit 17, the summary of those invoices, reflected both as well.

Porter moved for mistrial on the ground that "the jury has now heard evidence that was clearly not to have gone to them." The court refused the motion. Porter then moved to strike exhibit 17, and the court struck the exhibit. The court instructed the jury prior to deliberation that the "amount of damages testified to by Bryant Kincaid" from the exhibit 17 summary was withdrawn from their consideration in arriving at the verdict. In the course of deliberations, the jury requested exhibit 16, the box of invoices, and was allowed them. Porter argues that the prejudice from the incompetent Event Staff Services invoices reflected in the exhibit 17 summary of damages was thereby compounded because the incompetent invoices were never removed from exhibit 16. The transcript does not record that trial incident. Whether the Event Staff Services invoices had been removed, or whether Porter made objection to response to the jury request, simply does not appear. There was evidence, however, that the Contemporary Services and Event Staff Services invoices were readily distinguishable by their markings.

The denial of the motion for mistrial was not error. It was not an abuse of discretion for the court to stand on its correctives of the ultimate rejection of exhibit 17 and a withdrawal instruction to allay any prejudicial effect of the confused invoice evidence. *Pierce v. Platte–Clay Elec. Coop.*, 769 S.W.2d 769, 778[13, 14] (Mo. banc 1989). The court properly assumed that the jury was guided by those directions as well as by the exclusion of the Event Staff Services invoices during the testimony of Karen Ansen. The amount returned as damages by each verdict caused the trial court no uneasiness, as the order on the post-trial motions and the judgment entered discloses. The appeal of the defendant Porter is denied on the grounds presented.

Appellate Review for Plain Error

██ Our opinion determines that the entry of judgment notwithstanding the verdict for fraudulent representation was erroneous, and so sustains the appeal of plaintiff Kincaid. That entry rests on the ground that, although the damages returned separately for breach of contract and fraudulent representation were proven, in combination, they constituted a double recovery. Our opinion also rejects the contentions the defendant Porter asserts against the separate verdicts for breach of contract and fraudulent representation, and so denies the appeal of the defendant Porter. The error of double recovery was not among the objections the defendant made at the trial or raised on appeal. Nor was that concern treated by the trial court as a matter of plain error. *See* Rule 78.08. To restore the verdicts as returned and enter them as a judgment, nevertheless, would be to condone a clear error and a manifest injustice. Rule 84.13(c).

The purpose of an award of damages is to make the injured person whole by money compensation. An injury arises when the legal right of the person is violated. *Stroud v. Masek*, 262 S.W.2d 47, 51[6] (Mo. 1953); 22 Am.Jur.2d *Damages* § 26 (1988). A single transaction may invade more than one right, and the person injured may sue on more than one theory of recovery. The plaintiff, however, may not be made more than whole or receive more than one full recovery for the same harm. *Ross v. Holton*, 640 S.W.2d 166, 173[12, 13] (Mo.App. 1982).

██ It is well to understand that a claim for breach of contract and a claim for fraudulent inducement to make that contract are not inconsistent remedies. A party who fraudulently induces another to contract and then also refuses to perform the contract commits two separate wrongs, so that the same transaction gives rise to distinct claims that may be pursued to satisfaction consecutively. *Id.* They may be joined in one pleading and submitted for verdicts in the same action. Rules 55.06(a)

70.02. The irregularity of the submissions, because they allow the jury to return the same damages albeit on two different theories of claim, is a matter subject to objection. *Id.*; Rule 70.03. It is also a matter subject to waiver. *Wright v. Martin*, 674 S.W.2d 238, 242[5, 6] (Mo.App.1984).

██ The two claims submitted by Kincaid are not inconsistent because they rest on his affirmance of the contract notwithstanding its fraudulent inducement by Porter. The measure of damages in a breach of contract case is the benefit of the bargain. Compensation is the value of the performance of the contract. *Boten v. Brecklein*, 452 S.W.2d 86, 93[4–8] (Mo. 1970). The measure of damages in a fraud case where the defrauded party retains the property—and in the absence of special damages—is the benefit of the bargain. Compensation is " 'the difference between the actual value of the property and what its value would have been if it had been as represented.' " *Smith v. Tracy*, 372 S.W.2d 925, 938[13] (Mo.1963).

██ The Kincaid petition pleads the two claims by intermixed allegations of conduct that constitute both a breach of contract by Porter and show his fraudulent intent in the making of the contract. There are no allegations of special damages, although the prayer for relief requests punitive damages for the fraudulent conduct. The compensation the Kincaid evidence undertook to prove was the benefits and gain it would have made under the contract had its terms been performed, and indeed had been intended to be performed. Thus, the proven damages for both the breach of contract and for the tort were the same, and merged. *Bold v. Simpson*, 802 F.2d 314, 321[7] (8th Cir.1986). Kincaid was entitled to be made whole by one compensatory damage award, but not to the windfall of a double recovery.[4] A double recovery is a species of unjust enrichment and is governed by the same principles of preventive justice. *Twellman v. Lindell Trust Co.*, 534 S.W.2d 83, 94[16, 17] (Mo.App.1976).

---

**4.** There was a pleading for punitive damages for the fraudulent representation, but the issue was not tendered or submitted. *See* 22 Am.Jur.2d *Damages* § 27 n. 71 (1988).

Thus, instructions that allow a jury to return damages that overlap or duplicate are error. *Clayton v. Brokerage Co. of St. Louis,* 632 S.W.2d 300, 306[11, 12] (Mo. App.1982).

In jury instruction, the decision of the trial judge to give or refuse an instruction is a decision of an issue of law in the case. Rule 70.02; MAI, How to Use This Book, XCVII (1981). It was error for the trial court to enable the jury to return verdicts for redundant damages. It was plain error for the trial court then to receive the verdicts. *In re Marriage of Hollander,* 615 S.W.2d 492, 493[2, 3] (Mo.App.1981); Rule 84.13(c). The $35,000 verdict for breach of contract merged into the $36,000 verdict for fraudulent representation.

The judgment is reversed and remanded with directions to set aside the verdict for $35,000 for breach of contract and to enter judgment for Kincaid for $36,000 on the verdict for fraudulent representation.

All concur.

MANFORD, J., did not participate in the decision of this case, due to his death on February 12, 1991.

### APPENDIX A

### IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI AT INDEPENDENCE

Kincaid Enterprises, Inc., Plaintiff,

vs.

Herbert Porter, Defendant.

CV85–19839 Division 16 Docket "D".

### AMENDED ORDER

On this date the Court takes up Defendant's Motion for New Trial or in the Alternative Judgment Notwithstanding the Verdict, filed November 15, 1989 *.

After reviewing the record and proceedings herein including Defendant's Motion

and Plaintiff's Opposing Suggestions, the Court finds:

1) That Plaintiff plead and proved all the necessary elements to submit the issue of Breach of Contract to the jury.

2) That every element of Plaintiff's verdict director instruction number 7 was supported by competent and substantial evidence.

3) That Plaintiff plead and proved all the necessary elements to submit the issue of Fraudulent Representation to the jury.

4) That every element of Plaintiff's verdict director instruction number 12 was supported by competent and substantial evidence.

5) That Verdict A in the amount of $35,-000 on the Breach of Contract was supported by competent and substantial evidence.

6) That Verdict B in the amount of $36,-000 on the Fraudulent Representation was supported by competent and substantial evidence.

7) That to permit the combined verdicts of $35,000 and $36,000 to stand would constitute a double recovery of any actual damages proved by Plaintiff.

8) That it would be against the weight of the evidence to permit the verdicts of $35,000 and $36,000 each to stand.

9) That it would be against the weight of the evidence to permit Plaintiff to recover a total judgment of $71,000.

THEREFORE IT IS ORDERED that Defendant's Motion directed to Plaintiff's recovery of $36,000 for Fraudulent Representation shall be and is hereby Sustained, that Verdict B in the sum of $36,000 is set aside, and that judgment is entered in favor of Defendant and against Plaintiff, notwithstanding the verdict on Plaintiff's claim for Fraudulent Representation.

IT IS FURTHER ORDERED that Defendant's Motion is Overruled as to Plaintiff's recovery of $35,000 on its claim for Breach of Contract.

---

* The trial court's post trial order was issued January 18, 1990. This Amended Order was issued February 1, 1990, only to correct the date of the post trial motion which was erroneously entered on the original order as August 15, 1989.

IT IS FURTHER ORDERED that in all other respects Defendant's Motion is Overruled.

2-1-90

John I. Moran /s/

DATE

JOHN I. MORAN, JUDGE

## APPENDIX B

### Instruction No. 12

Your verdict must be for plaintiff if you believe:

First, defendant, during the negotiations which resulted in the execution by plaintiff and defendant of the Sales Agreement mentioned in the evidence, made representations to plaintiff, and/or in signing the Sales Agreement, made representations to plaintiff regarding

a. The existence and number of uniforms owned by defendant; or

b. The existence of a customer or client list; or

c. That defendant was selling the usher service business as a going concern, including the good will of the business, the trade name, customer lists, contracts, uniforms, and employee list used in connection with the business; or

d. That he had carried on the business in substantially the same manner as before and that he had used his best effort to maintain and preserve the business organization intact, retain the employees and maintain the business relationship with customers and others having business relations with the business; or

e. That for a period of three years defendant would not directly or indirectly request or advise any present or future clients to withdraw, curtail or cancel their business with the purchaser; or

f. That for a period of three years defendant would not directly or indi-

rectly induce, or attempt to influence, any employee to terminate his or her employment; and

Second, the representations were false, and

Third, the defendant knew said representations were false, and

Fourth, the representations were material to the decision of plaintiff to enter into the Sales Agreement, and

Fifth, plaintiff relied on the representations in entering into the Sales Agreement, and in so relying, plaintiff was using ordinary care, and

Sixth, as a direct result of such representations the plaintiff was damaged.

## APPENDIX C

### Instruction No. 7

Your verdict must be for plaintiff if you believe:

First, plaintiff and defendant entered the Sales Agreement mentioned in the evidence; and

Second, defendant on or after March 1, 1985,

a. Told customers that he had sold the business, and that he was out of it, and that they would be contacted by the two services that were operating in the city; or

b. Failed to assure customers that Porter Personnel would continue to provide service and people, and thereby destroyed the goodwill and trade name; or,

c. Did not provide plaintiff with customer or client lists and information; or,

d. Failed to identify and transfer all of the uniforms which were assets of Porter Personnel Service; or,

e. Provided Michael Jack with uniform coats and vests; or,

f. Provided Michael Jack with the employee list; or,

g. Told his employees that he was selling his business to plaintiff, and that Bryant Kincaid did not hire blacks, and that they could obtain work from Michael Jack; and,

Third, because of said actions defendant's contract obligations were not performed, and,

Fourth, plaintiff was thereby damaged.