# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

## No. 05-2122

_____

Dan Margolies;               *
                             *
          Movant Below,      *
                             *
Matthew Headley Holdings, LLC, *
doing business as Heartland Snacks, *
formerly known as Incito Capital *   Appeals From the United States
Group,                       *   District Court for the
                             *   Western District of Missouri.
          Plaintiff-Appellee, *
                             *
     v.                      *
                             *
McCleary, Inc.; Charles Patrick *
McCleary; Jerry Stokely;     *
                             *
          Defendants-Appellants. *

_____

## No. 05-2123

_____

Dan Margolies;               *
                             *
          Movant Below,      *
                             *
Matthew Headley Holdings, LLC, *
doing business as Heartland Snacks, *
formerly known as Incito Capital *
Group,                       *
                             *
          Plaintiff-Appellant, *

```
                                          *
       v.                                 *
                                          *
McCleary, Inc.; Charles Patrick           *
McCleary; Jerry Stokely;                  *
                                          *
       Defendants-Appellees.              *
```

————————

Submitted:  March 15, 2006
Filed:  May 19, 2006

————————

Before COLLOTON, HEANEY, and GRUENDER, Circuit Judges.

————————

HEANEY, Circuit Judge.

This case involves an agreement to distribute Guy's brand snacks gone bad. McCleary, Inc. (McCleary), appeals from a judgment in the amount of $6.45 million rendered in favor of Matthew Headley Holdings, LLC (hereinafter Heartland), on Heartland's fraud and breach of contract claims. McCleary raises numerous issues on appeal, only three of which require resolution: (1) whether the district court erred in admitting testimony and exhibits from Heartland's expert witness on damages, (2) whether the verdict and the jury instructions correspond to the state of Missouri contract law on the issue of substantial performance by the plaintiff, and (3) whether the fraud verdict can stand against the corporation, where the jury assessed no damages against its agents. Heartland cross-appeals the district court's vacation of the $2.15 million damages verdict on its claims of breach of an implied covenant of good faith and fair dealing. Because the fraud verdict is inconsistent with Missouri law, we have no alternative but to reverse that part of the judgment. We affirm in all other respects.

## BACKGROUND

In 1938, Guy Caldwell started Guy's brand snack foods, a business he built into "the primary regional snack food manufacturer in the country." (Trial Tr. Vol. I at 42.) The business changed hands through the years, but maintained strong regional sales for its products. For instance, in 1997, 1998, and 1999, Guy's brand sales were approximately $100 million per year. In 2000, Guy's parent company filed for bankruptcy protection, and Guy's brand products were off the market for a short time. Siefert Company purchased Guy's and the brand reentered the market. Soon, however, Siefert Company also floundered, and it filed for bankruptcy in 2001. Guy's products again left the market. Then, in the summer of 2001, Heartland acquired Guy's brand name, trade names, recipes, and packaging. According to Tom Price, president of Heartland's Kansas City sales, Heartland's intent was to return Guy's brand products to their former strong market position.

Shortly after Heartland became owner of Guy's, McCleary, which was also in the snack food business, approached Heartland and expressed interest in pursuing a partnership. On September 28, 2001, Heartland and McCleary reached a written agreement "whereby McCleary will act as the exclusive distributor of Guys branded snack food products" throughout Kansas, Missouri, and southern Illinois. (J.A. at 450.) The products included in the agreement were described as "substantially all of the product classes and/or categories previously sold under the Guys Brand," specifically including "Potato Chips, Extruded Cheese Products, Peanuts, Popcorn, Pretzels, Tortilla Chips, Pork Rinds, and Can or Jar Salsa and/or Dips." (Id.) According to the agreement, McCleary was responsible not only for the distribution of Guy's brand products, but also was bound to "coordinate the manufacture of all Guys branded products from the date of signing of this agreement until such time as [a Heartland] owned manufacturing facility is completed and capable of producing Guys branded products in such quantities and at such quality that meets or exceeds

demand in the defined geographic territory." (Id. at 450-51.) The agreement was written for a five-year term, renewable for another five years at the written request of either party.

Within thirty days of signing the agreement, McCleary had entered the Kansas City market with a portion of the Guy's brand product line. Because McCleary had previously been distributing its own Pajeda's brand snacks, it substituted Guy's brand products in much of the shelf space formerly occupied by Pajeda's. By so doing, McCleary was not required to engage stores in negotiations for shelf space; it simply filled its own products' space with Guy's brand snacks.

In late October or early November of 2001, Mark Stisser, the managing director of Heartland, met with Pat McCleary, president of McCleary. Stisser shared his concern that McCleary's manufacturer was not using the correct recipe in producing Guy's brand products. At the same meeting, Pat McCleary shared some potential marketing programs with Stisser. Stisser expressed his excitement at using these programs to gain share in the Saint Louis market. In response, Pat McCleary explained that he was not ready to enter Saint Louis. McCleary had a business relationship with Jay's, another snack food manufacturer and major competitor of Guy's. According to Stisser, Pat McCleary stated, "Well, Jay's, one of my biggest customers, owes me $3 million and you've got to give me a little bit of time in St. Louis." (Trial Tr. Vol. I at 80.) Neither Pat McCleary nor anyone other at McCleary had informed Heartland of its business association with Jay's prior to signing the agreement.

Over the next few months, the relationship between McCleary and Heartland eroded significantly. When McCleary put forth its projections for Kansas City sales–the only area that McCleary had entered with Guy's brand products – Heartland found the projections exceedingly modest and asked for reconsideration. Heartland

-4-

attempted to reach agreement with McCleary on other marketing and sales goals and strategies, but found it difficult to communicate with McCleary. Despite Heartland's insistence that McCleary expand its distribution ring, McCleary continued to distribute Guy's products only in Kansas City. The product that it did distribute continued to be substandard, at least in the eyes of Heartland.

On February 8, 2002, Stisser wrote to McCleary, demanding that McCleary put forth a timetable for entering the Saint Louis market. McCleary did not respond. By letter dated April 22, 2002, Stisser again wrote to McCleary to inform McCleary that Heartland considered McCleary to be in default of the agreement. Heartland detailed numerous issues surrounding McCleary's nonperformance of its obligation to produce and distribute Guy's brand products throughout the three-state region referenced in the agreement. Nonetheless, McCleary still refused to introduce Guy's brand products anywhere other than Kansas City. In July of 2002, Heartland sent written notice to McCleary that it was terminating the contract.

Heartland then filed suit in district court, making numerous claims related to the Guy's agreement. Four of those claims proceeded to trial on August 9, 2004, including one alleging breach of contract, one alleging breach of an implied covenant of good faith and fair dealing, and a fraud claim.[1] While the former two claims pertained only to McCleary, the fraud claim named McCleary, as well as Pat McCleary and Jerry Stokely, president of McCleary's Snack Food Division, personally, as defendants.

At trial, Heartland introduced the expert testimony of Ed Crumm. He was hired to testify as to the extent of Heartland's damages related to the Guy's agreement. Crumm testified that he was a certified public accountant with twenty-seven years of experience, much of that time dedicated to forecasting and projecting future business

---

[1]Heartland abandoned its fourth claim, also alleging fraud, during the trial.

performance. He was intimately familiar with the historical performance of Guy's brand products, as he conducted auditing and accounting services for Guy's from 1999 through 2001. Crumm further testified that, from reviewing Guy's past performance and comparing it to McCleary's actual and potential performance under the agreement, he was able to forecast figures that he believed reflected a conservative estimate of Heartland's damages. Crumm concluded that Heartland had lost a total of $6,814,560 in royalty revenue during the contract period, and could expect to spend at least $1,848,000 to return Guy's products to their former market position, for a total of $8,662,560 in actual damages.

After a short period of deliberation, the jury returned verdicts in favor of Heartland on all claims. Pursuant to special interrogatories, the jury found in favor of Heartland on the breach of contract and breach of implied covenant of good faith and fair dealing claims, assessing damages at $4.3 million, further apportioning damages at $2.15 million for each breach. On the remaining fraud in the inducement claim, the jury found against McCleary, Pat McCleary, and Jerry Stokely, but only assessed damages against McCleary, again in the amount of $4.3 million. McCleary then filed a motion to modify the judgment, which the district court granted in part because it found the "claim for breach of an implied covenant of good faith and fair dealing was inconsistent with and duplicative of plaintiff's breach of contract claim." (McCleary's Addendum at A15.) Accordingly, the court vacated the judgment on the claim related to breach of an implied covenant of good faith and fair dealing, consequently reducing the jury verdict to $6,450,000. McClearly then filed this appeal, challenging numerous aspects of the trial and the judgment. Heartland has cross-appealed, arguing that the district court erred in vacating in part the judgment in its favor.

**ANALYSIS**

## I. ADMISSION OF EVIDENCE FROM HEARTLAND'S EXPERT WITNESS

McCleary first contends that Heartland's expert testimony and report were improperly admitted, and that, in the absence of that evidence, there was no evidence of damages, entitling McCleary to judgment as a matter of law. The admissibility of expert witness evidence is left to the discretion of the trial court, and accordingly, we review for an abuse of that discretion. Gen. Elec. Co. v. Joiner, 522 U.S 136, 141-42 (1997); Lauzon v. Senco Prods. Inc., 270 F.3d 681, 685 (8th Cir. 2001).

In order to be admissible, expert testimony must be both relevant to a material issue and reliable. Fed. R. Evid. 702; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); see also Miller v. Baker Implement Co., 439 F.3d 407, 412 (8th Cir. 2006) ("The district court fulfills its role as gatekeeper by screening the proposed evidence and evaluating it in light of the specific circumstances of the case to ensure that it is reliable and sufficiently relevant to assist the jury in resolving the factual disputes."). "We give district courts great latitude in determining whether expert testimony meets the reliability requisites of Rule 702." First Union Nat'l Bank v. Benham, 423 F.3d 855, 861 (8th Cir. 2005).

McCleary directs us to what it views as eight infirmities related to Crumm's expert opinion. They share a commonality, however, in that each point takes issue with assumptions Crumm wove into his damages estimate. In other words, McCleary challenges the factual basis for Crumm's report on damages. Time and again, we have noted that the factual basis of an expert's opinion generally relates to the weight a jury ought to accord that opinion. Marvin Lumber & Cedar Co. v. PPG Indust., Inc., 401 F.3d 901, 916 (8th Cir. 2005). Thus, unless the factual or methodological basis for the testimony is fundamentally unreliable, its admission is not an abuse of discretion.

Meterlogic, Inc. v. KLT, Inc., 368 F.3d 1017, 1019 (8th Cir. 2004); see also Children's Broadcasting Corp. v. Walt Disney Co., 357 F.3d 860, 865 (8th Cir. 2003) (recognizing that challenges to the factual basis of an expert's opinion do not generally affect its admissibility).

We thus turn to Crumm's testimony and report to ascertain whether they were rooted in reason and factually sufficient. Crumm stated that he was a certified public accountant with twenty-seven years of experience in the field. He and his firm were in the business of forecasting revenue projections for businesses. He testified that he undertook this type of exercise to estimate the damages flowing from McCleary's nonperformance on the contract. Crumm began his analysis by considering the snack food market in relation to the agreement. He researched industry data as to the breadth of the market for snack food products, as well as historic data detailing Guy's brand product performance in those markets.[2] Based on these figures and assuming that Guy's products would take some time to regain their prior position in the market, Crumm was able to estimate how much revenue Guy's brand products could have generated during the contract. Crumm then considered how McCleary had done under the contract, and compared that to his estimation of how Guy's brand products could reasonably be expected to perform. He found that McCleary's conduct resulted in over $85 million in lost Guy's sales, and over $8.6 million in damage to Heartland, including the estimated costs associated with relaunching the Guy's brand in the markets that McCleary had neglected. Crumm double-checked his estimates by comparing these figures to his knowledge of Guy's historic performance, as well as the expenses it incurred in reentering the market after a previous bankruptcy.

McCleary suggests these estimates are unsound because they included assumptions about what level of market penetration Guy's brand products could

---

[2]Crumm had some complementary knowledge of Guy's past performance, as Guy's was a client of Crumm's from 1999 through 2001.

achieve, how much market share Guy's products could attain, what classes of product were covered by the agreement, and what it would cost for Heartland to reenter the market. As Crumm aptly explained at trial, he made assumptions in areas where it was impossible to gather more concrete data due to McCleary's nonperformance. Contrary to McCleary's suggestion, these assumptions were not the product of mere conjecture with no factual basis; they were estimates generated through consideration of Guy's past performance and potential for future performance, given current accepted market conditions. As we recognized in Cole v. Control Data Corp., 947 F.2d 313, 319, (8th Cir. 1991), "Under Missouri law, [the plaintiff] was not required to prove the exact amount of his damages, but only to produce evidence which established them with reasonable certainty. Moreover, it is the fact of damages, rather than the amount of damages, which must be proven with reasonable certainty." (Citation omitted). Crumm's testimony and report were sufficiently reliable and relevant that the court was within its discretion to admit them, and they support the jury verdict. We thus find no error in the admission of evidence from Heartland's expert witness.

## II.     MCCLEARY'S ASSIGNMENT OF INSTRUCTIONAL ERROR

McCleary next argues that the district court erroneously instructed the jury with regard to Heartland's breach of contract claim, permitting the jury to find for Heartland without regard to whether Heartland substantially performed its obligations on the contract. The instruction read as follows:

> Your verdict must be for plaintiff and against defendant McCleary Incorporated if you believe:

> First, McCleary did not distribute substantially all of the product classes and categories previously sold under the Guys Brand to all classes of trade in the entire states of Missouri, Kansas, and Southern Illinois, and

Second, because defendant McCleary Incorporated did not do the above, defendant's contract obligations were not performed, and

Third, plaintiff was thereby damaged.

(J.A. at 634.)

The district court enjoys "broad discretion to instruct the jury in the form and language it considers fair and adequate to present the substantive law," and "[w]e will not reverse absent harmful error." Gray v. Bicknell, 86 F.3d 1472, 1485 (8th Cir. 1996). For a diversity claim such as this, the instructions as a whole must adequately and fairly reflect the state of Missouri law on the issue. Ford v. GACS, Inc., 265 F.3d 670, 679 (8th Cir. 2001).

Missouri's Supreme Court has promulgated model jury instructions, entitled Missouri Approved Jury Instructions (MAI), for use in civil cases. See Mo. R. Civ. P. 70.01, 70.02; see also Rice v. Bol, 116 S.W.3d 599, 606 (Mo. Ct. App. 2003) ("If there exists an applicable MAI, Rule 70.02(b) mandates its exclusive use."). The instruction given by the district court tracked MAI 26.02, the common verdict directing instruction for Missouri breach of contract actions. In contrast, the instruction proffered by McCleary included as an element that "plaintiff substantially performed its agreement." (Heartland's Addendum at A-15.) This instruction is similar to MAI 26.07. Notes on Use for that instruction, however, caution that "[t]his instruction is not proper in all contract cases," and its Committee Comment states that it "would be appropriate where recovery is sought on a building contract." This case, of course, does not involve a construction or building contract. Moreover, McCleary has conceded that the "substantial performance" required of Heartland in its proffered jury instruction was simply Heartland's agreement to allow McCleary to act as exclusive distributor of Guy's brand snacks. McCleary directs us to no evidence suggestive that Heartland neglected its exclusivity obligation. A party is entitled to

-10-

have the jury instructed consistent with his or her theory of the case, but only where some evidence supports that theory. See Brown v. Sandals Resorts Int'l, 284 F.3d 949, 953 (8th Cir. 2002) ("The jury should receive instructions on issues supported by competent evidence in the record; the trial court is not required to instruct on issues that do not find support in the record."). A jury need not determine matters not in dispute, and here, there was no dispute that Heartland allowed McCleary to act as the sole distributor of Guy's brand snacks. Thus, the district court was within its discretion to reject McCleary's proffered instruction on substantial performance.

McCleary further suggests that MAI 26.06, which included as an element that plaintiff performed his agreement under the contract, was the appropriate instruction. McCleary did not proffer such an instruction to the district court. Accordingly, our review is limited to plain error. Cross v. Cleaver, 142 F.3d 1059, 1068 (8th Cir. 1998). In order to prevail on a claim of plain instructional error, McCleary must demonstrate that it is the victim of an error that is plain under the law, that it suffered prejudice to its substantial rights as a result, and that if this court left the error uncorrected it would result in a miscarriage of justice. Id.

We have often said that we reverse on a claim of plain instructional error only in the "exceptional case." See id. at 1068-69 (further citation omitted). This is not such a case. MAI 26.06 is to be used where the terms of a contract are at issue. Rice, 116 S.W.3d at 606. McCleary submits that Heartland's failure to agree on certain sales targets and marketing strategies put at issue those terms and whether Heartland had performed each aspect of the contract. That may be true, but nonetheless we question whether MAI 26.02 was so inferior in this instance to MAI 26.06 that failure to substitute the former with the latter was a plain error of law. Cf. McMillan v. First State Bank, 935 S.W.2d 329, 334 (Mo. Ct. App. 1996) (rejecting the argument that MAI 26.06 was a necessary instruction where the claimed dispute on a contract's terms was not "determinative of the issues as submitted by the parties"). Even if MAI

26.06 was appropriate, its absence from the jury instructions does not call into question the "fairness, integrity, or public reputation of the judicial proceedings." Cross 142 F.3d at 1068-69 (further citation omitted). McCleary was granted the opportunity to submit its own instructions on the issue, and, in fact, chose to do so by proffering the substantial performance instruction referenced above. We simply cannot agree that the failure of the court to put forth an instruction, sua sponte, that neither party wanted at the time was fundamentally unfair or put the judiciary into disrepute. Thus, if any error attached here, we decline the invitation to correct it when presented with it for the first time on appeal.

## III. FRAUD AND AGENCY

McCleary asserts the district court erred in denying its motion for judgment as a matter of law on the claim of fraudulent concealment.[3] Although the jury found McCleary liable for $4.3 million in damages, it argues that, under Missouri law, it cannot be held accountable as a principal because the jury assessed no damages against either individual defendant as an agent.

We review the denial of a motion for judgment as a matter of law de novo, applying the same legal standard as the district court. Campos v. City of Blue Springs, Mo., 289 F.3d 546, 550 (8th Cir. 2002). "A grant of judgment as a matter of law following a jury verdict is appropriate only when the evidence is 'entirely insufficient to support the verdict.'" Garcia v. City of Trenton, 348 F.3d 726, 727 (8th

---

[3]To sustain a claim for false concealment in Missouri, the plaintiff must prove the defendant's knowledge of material facts, a duty on behalf of the defendant to make those facts known, the defendant's successful concealment of those facts, the defendant's intent to induce reliance upon its silence, actual and reasonable reliance on behalf of the plaintiff, and injury to the plaintiff. Keefhaver v. Kimbrell, 58 S.W.3d 54, 58-59 (Mo. Ct. App. 2001).

-12-

Cir. 2003) (quoting <u>Belk v. City of Eldon</u>, 228 F.3d 872, 878 (2000)). Failure of proof on an essential element of a claim entitles the moving party to judgment as a matter of law. <u>Fox v. T-H Cont'l Ltd. P'ship</u>, 78 F.3d 409, 413-15 (8th Cir. 1996) (holding, in a diversity case, that judgment as a matter of law in favor of employer was appropriate on employee's promissory estoppel claim where the employee's evidence did not establish each element of the state law claim).

The parties agree that Missouri substantive law governs this issue, and further agree on the law itself. In Missouri, a verdict of derivative liability against a principal cannot stand if the principal's purported offending agent was absolved from liability. This is referred to as the "<u>McGinnis</u> doctrine," for the rule was announced as the law in Missouri first in <u>McGinnis v. Chicago, Rock Island & Pacific Railway Co.</u>, 98 S.W. 590 (Mo. 1906). <u>See</u> <u>Burnett v. Griffith</u>, 739 S.W.2d 712, 714 (Mo. 1987) ("There is no question that the '<u>McGinnis</u> Doctrine' is the law in Missouri . . . ."). "<u>McGinnis</u> holds that when a claim is submitted on the theory of respondeat superior and the jury returns inconsistent verdicts, exonerating the employee, but holding against the employer, the court must grant the employer judgment notwithstanding the verdict." <u>Burnett</u>, 739 S.W.2d at 713. And while <u>McGinnis</u> itself was a case involving claims of negligence, the rule has been applied to intentional tort claims in subsequent cases. <u>See, e.g.</u>, <u>Burnett</u>, 739 S.W.2d at 714-16 (analyzing the plaintiff's claims of false imprisonment and malicious prosecution in light of <u>McGinnis</u>). The doctrine applies not only to the fact of liability, but also to the amount of damages assessed: "A principal whose liability is purely derivative cannot be held liable for actual damages more than the amount awarded against its agent." <u>Bradshaw v. Deming</u>, 837 S.W.2d 592, 594 (Mo. Ct. App. 1992) (citing <u>State ex rel. Scarborough v. Earley</u>, 219 S.W.2d 879, 879-82 (Mo. Ct. App. 1949) (reducing a surety's liability for an assault to the same amount as the principal)).

We now turn to application of the McGinnis doctrine to this case. First, we note that the jury was correctly instructed that McCleary could only be held liable to the extent of its agents. The two agents sued in this case were Pat McCleary and Jerry Stokely, both of whom were found liable for fraudulent concealment but assessed no damages. Thus, unless there is evidence that other agents contributed to the corporate misdeed, McCleary is entitled to have its liability reduced to zero as well. Accord Burnett, 739 S.W.2d at 716 ("Where the liability of the employer may be predicated upon a basis of liability other than the conduct of the exonerated employee the McGinnis doctrine does not apply.").

In the section of the complaint relevant to the claim of fraudulent concealment, Heartland references the conduct of McCleary, Pat McCleary, and Jerry Stokely. Nowhere does Heartland further differentiate among the conduct of the three, nor does Heartland suggest in its complaint that McCleary's conduct went beyond that of these two agents.

We have carefully reviewed the record of the trial, and conclude the verdict for Heartland cannot stand in light of the individual defendants' verdicts. Heartland's allegations of corporate fraud rested solely on the evidence that Pat McCleary and Jerry Stokely concealed the debt that Jay's owed to McCleary prior to executing the distributorship agreement with Heartland. At oral argument, Heartland assured this court that there was evidence of corporate misconduct through actors other than Pat McCleary and Jerry Stokely, but the record simply does not support that assertion. Heartland adduced evidence from which a jury could find that Pat McCleary and Jerry Stokely concealed the debt owed to it by Jay's, but nothing linked that wrongdoing to anyone else in the corporation. Randy Morrow testified that he was vice president of sales and marketing for McCleary's snack foods division, and that, in that capacity, he was responsible for selling product. He stated that he was aware Jay's was a customer of McCleary's, but said nothing about knowledge of Jay's substantial debt.

John Kerry, a former McCleary's employee, likewise did not indicate he knew of the debt. He possessed little information about the agreement, and stated he was not involved in its negotiation. Moreover, he testified that he only became aware that McCleary's relationship with Jay's may affect McCleary's willingness to distribute Guy's brand products *after* the agreement was signed.

In short, none of the trial testimony or evidence connected McCleary's fraudulent concealment of Jay's debt to anyone other than Pat McCleary and Jerry Stokely. In the absence of any other viable theory of corporate wrongdoing supported by the record, we have no alternative than to reduce the damages assessed against McCleary to match the verdict against its agents.[4] The application of the McGinnis doctrine may seem a bitter pill for Heartland to swallow, but that is because Heartland's "strategy failed not because the McGinnis rule is unjust."[5] Burnett, 739 S.W.2d at 715; see also McGinnis, 98 S.W. at 594 (characterizing as a "monstrosity" a verdict absolving an employee of negligence yet assessing damages against the employer under the theory of respondeat superior). Accordingly, we reverse the denial of McCleary's motion for judgment as a matter of law on Heartland's fraudulent concealment claim.

---

[4]Missouri law afforded Heartland the opportunity to have the jury harmonize the verdicts against McCleary, Pat McCleary, and Jerry Stokely, Burnett, 739 S.W.2d at 715, but Heartland declined to do so.

[5]The strategy that failed is, of course, Heartland's attempt to attach an agent's liability to a claim against a corporation. Where successful, the plaintiff enjoys the luxury of verdicts against both tortfeasors. As here, though, the strategy can backfire where that agent is absolved and there exists no other basis for corporate liability. In that instance, the recovery against the corporation cannot stand either.

## IV. VACATION OF JUDGMENT ON THE CLAIM OF BREACH OF GOOD FAITH AND FAIR DEALING

Heartland cross-appeals the district court's partial grant of McCleary's Rule 59(e) motion to modify the judgment so as to eliminate the $2.15 million award for McCleary's breach of an implied covenant of good faith and fair dealing. The district court vacated the judgment on this claim, finding it "inconsistent with and duplicative of plaintiff's breach of contract claim." (McCleary's Addendum at A15.)

We review the district court's grant of a motion to modify, alter, or amend the judgment for an abuse of discretion. Computrol, Inc. v. Newtrend, L.P., 203 F.3d 1064, 1069-70 (8th Cir. 2000). "'An abuse of discretion will only be found if the district court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions.'" Perkins v. U.S. West Commc'ns, 138 F.3d 336, 340 (8th Cir. 1998) (quoting Mathenia v. Delo, 99 F.3d 1476, 1480 (8th Cir. 1996)).

We agree with Heartland that a claim of breach of a duty of good faith and fair dealing is not fundamentally inconsistent with or duplicative of a breach of contract claim. Two claims are inconsistent if "proof of one necessarily negates, repudiates, and disproves the other." Trimble v. Pracna, 167 S.W.3d 706, 711 (Mo. 2005). But "material breach [of a contract] does not necessarily equal a breach of the implied covenant of good faith and fair dealing," for "[t]he covenant of good faith and fair dealing encompasses an obligation imposed by law to prevent opportunistic behavior, that is, the exploitation of changing economic conditions to ensure gains in excess of those reasonably expected at the time of contracting." Spencer Reed Group, Inc. v. Pickett, 163 S.W.3d 570, 574 (Mo. Ct. App. 2005). Thus, a breach of the duty of good faith and fair dealing claim does not automatically fail if a breach of contract claim succeeds, or vice versa.

The question remains, however, whether, given the proof in this case, the claims were either inconsistent or duplicative. The district court so held, and we see no error in that ruling, at least with respect to duplication. Heartland itself stated that the evidence on the claim that McCleary breached its contract promise to distribute Guy's brand products, and the evidence that McCleary did not use good faith to distribute the brand throughout the contract territory "is nearly identical." (Heartland's Br. at 90.) We agree, but omit the word "nearly." These two claims rested on precisely the same evidence–that McCleary failed to distribute Guy's brand snack products. Moreover, Heartland's own expert measured Heartland's damages by reference to McCleary's nonperformance on the contract. In that respect, this case is similar to Kincaid Enterprises, Inc. v. Porter, 812 S.W.2d 892 (Mo. Ct. App. 1991). In Porter, the plaintiff purchased a business from the defendant, but, due to nonperformance of the defendant's obligations, sued for fraud and breach of contract. Id. at 894. The court remarked that these two concepts are not necessarily inconsistent, because "[a] party who fraudulently induces another to contract and then also refuses to perform the contract commits two separate wrongs, so that the same transaction gives rise to distinct claims that may be pursued to satisfaction consecutively." Id. at 900. The court further stated, however, that a plaintiff "may not be made more than whole or receive more than one full recovery for the same harm." Id. Turning to the facts before it, the court noted that the damages evidence the plaintiff put forth "was the benefits and gain it would have made under the contract had its terms been performed, and indeed had been intended to be performed." Id. Accordingly, the damages from each separate wrong merged; otherwise, the plaintiff would have been granted the "windfall of a double recovery." Id.

Heartland's evidence as to damages did not differentiate between McCleary's breach of its contract to distribute Guy's products and McCleary's breach of its implied duty of good faith to distribute Guy's products. Indeed, we fail to see how it could, as Heartland's evidence of each breach duplicated the other. As such, when

-17-

the district court was presented with verdicts of $2.15 million as damages for both claims respectively, it was proper to modify the judgment so as to eliminate the double recovery. We thus find no abuse of discretion in the vacation of judgment on the claim of breach of an implied covenant of good faith and fair dealing.

## CONCLUSION

For the reasons stated above, we affirm the award of $2.15 million on Heartland's breach of contract claim, as well as the vacation of the $2.15 million award for breach of good faith and fair dealing. In accordance with Missouri law, we reverse the portion of the judgment holding McCleary liable for $4.3 million in damages due to fraud because McCleary's agents were absolved of liability. As this renders McCleary's additional claims of error unnecessary to our decision, we remand for modification of the judgment and any further proceedings consistent with this opinion.

_____