Kristin GRIMM, Appellant,

v.

US WEST COMMUNICATIONS, INC., A Colorado Corporation, and Jamie McAllister, Appellees.

No. 00–1275.

Supreme Court of Iowa.

May 8, 2002.

Thomas Jackowski and Anthony F. Renzo of Babich & Renzo, P.C., Des Moines, for appellant.

Kerrie M. Plummer and Jay Chung of Gonzalez, Saggio & Harlan, West Des Moines, Tory M. Bishop and Marcia A. Rezac of Kutak Rock L.L.P., Omaha, Nebraska, and Darren E. Nadel, Denver, Colorado, for appellees.

LARSON, Justice.

Kristin Grimm, who had been fired from her job with U.S. West Communications, Inc., sued U.S. West and one of its supervisors, Jamie McAllister, on various claims stemming from her discharge from the company. The district court sustained the defendants' motion to dismiss. The plaintiff appealed. Of the numerous issues raised, none are properly resolved under a motion to dismiss. We reverse and remand.

## I. *Facts and Prior Proceedings.*

Kristin Grimm was employed by U.S. West as a directory assistance operator from June 1988 until she was discharged in March 1997. In June 1988 U.S. West had issued Grimm an employee handbook that outlined the company's policies, which stated in part:

> Unlawful discrimination against an individual based on ... sexual orientation ... is contrary to U.S. WEST policy and

strictly prohibited.... Because laws protecting an individual's right to non-discrimination based on sexual orientation only exist on a state or local basis, the Non–Discrimination Policy of the Company with respect to sexual orientation extends to all employees, regardless of whether or not a state or local law applies.

Grimm is homosexual, and she lived with another female employee of U.S. West, a fact that was well known by her supervisor, Jamie McAllister. Grimm alleges in her petition:

12. Beginning in 1995 and continuing until Plaintiff's discharge by Defendant U.S. West on or about March 3, 1997, Plaintiff was subjected to a hostile environment in the workplace including harassment, unreasonable conditions, and discriminatory treatment based on Plaintiff's sexual orientation. This discriminatory and hostile treatment included, but was not limited to, the following:

a. Excessive and discriminatory use of availability logs;

b. Discriminatory refusal to provide adequate training;

c. Discriminatory refusal to authorize account adjustment flexibility;

d. Corporate spying by remote observation;

e. Refusal to provide adequate security for Plaintiff following a threat on her life;

f. Improper effort to deny Plaintiff earned time off to be with her sister;

g. Generally subjecting Plaintiff to unfair, petty, and unreasonable daily decisions in the workplace[.]

13. Defendant McAllister, motivated by hostility to the Plaintiff due to Plaintiff's sexual orientation and gay lifestyle, orchestrated, manipulated, and encouraged an unfair accusation of misconduct by Defendants which resulted in Plaintiff's termination on or about March 3, 1997.

14. Following Plaintiff's termination, Defendant McAllister called Plaintiff's residence on three (3) separate occasions and made misleading statements to Plaintiff about the status of her final pay check and mocked Plaintiff's unemployment status.

Grimm initially filed her lawsuit in federal district court. She alleged a federal claim under the Labor Management Relations Act LMRA § 301(a), 29 U.S.C. §185(a), contending the company breached its collective bargaining agreement (CBA) by discriminating against her. She also filed her state tort claims under the federal court's supplemental jurisdiction under 28 U.S.C. § 1367. The federal claim under the LMRA was dismissed because it was not filed within the required six-month period. Because the LMRA claim had been dismissed, the federal court dismissed Grimm's independent state-law claims without prejudice because there was no longer federal court supplemental jurisdiction of the state claims. *See* 28 U.S.C. § 1367(c)(3).

Following dismissal in federal court, Grimm filed her suit in Polk County based solely on the remaining independent state-law claims. The defendants removed the case to federal court, claiming all of the state claims were preempted by the LMRA. Grimm moved to remand to the state court, and the motion was granted. The federal court concluded that Grimm's state-law claims were not preempted by the LMRA, that the federal court did not have jurisdiction, and the case would be remanded to state court. That ruling was not subject to appellate review. *See* 28 U.S.C. § 1447(d).

The defendants moved in state court to dismiss Grimm's petition on a number of

grounds, and the court granted the motion on all grounds urged.

## II. Principles of Review.

■ All of the issues presented here were raised in the district court by a motion to dismiss under Iowa Rule of Civil Procedure 88(a)(6) ("failure to state a claim upon which any relief may be granted") (now rule 1.421(1)(f)). A court's authority to dismiss under this rule is closely circumscribed. "We uphold such a dismissal only if we can conclude that no state of facts is conceivable under which a plaintiff might show a right of recovery." *Smith v. Smith*, 513 N.W.2d 728, 730 (Iowa 1994). We address issues presented in a motion to dismiss based on facts apparent on the face of the petition or conceded by the plaintiff. *See Gray v. Kinseth Corp.*, 636 N.W.2d 100, 102 (Iowa 2001) (holding that plaintiff's concession of facts outside the petition were properly considered "to resolve the narrow legal issue [under the motion to dismiss] whether his suit is time-barred").

## III. Interference With Contractual Relationship.

■ Grimm alleged McAllister interfered with Grimm's contractual relationship with U.S. West. The elements of this claim are (1) the plaintiff had a valid contractual relationship with U.S. West, (2) the defendant knew of that relationship, (3) the defendant intentionally interfered with that relationship, (4) the defendant's action caused U.S. West to breach its contractual relationship with the plaintiff, and (5) the amount of damages. *See Water Dev. Co. v. Bd. of Water Works*, 488 N.W.2d 158, 161 (Iowa 1992).

■ The problem for the plaintiff in this case is that McAllister is a supervisory employee of U.S. West, one of the parties to the employment contract. We have held such employees cannot be held liable for tortious interference with the employment contract. *See Harbit v. Voss Petroleum, Inc.*, 553 N.W.2d 329, 331 (Iowa 1996) (action for tortious interference, based on alleged retaliation for reporting sexual harassment, could not be maintained if all defendants were either plaintiff's employers or the employer's agents); *Klooster v. N. Iowa State Bank*, 404 N.W.2d 564 (Iowa 1987) (action related to existing contracts between the parties and no third parties were involved, therefore no claim of tortious interference). This is so because ordinarily when both parties are parties to a contract the proper remedy is a suit for breach of contract. *Tyler v. Percell*, 506 N.W.2d 805, 808 (Iowa Ct. App.1993) (citing *K & K Management, Inc. v. Lee*, 316 Md. 137, 557 A.2d 965, 974 (1989)).

■ Grimm cites *Hunter v. Board of Trustees*, 481 N.W.2d 510 (Iowa 1992), to support her argument that, in situations such as this, supervisors may be held liable for interference with a contract. Although Grimm's argument is not clearly illuminated, *Hunter* recognized a cause of action for tortious interference with an employment contract when a supervisor discharges another employee in violation of the employment contract, and the discharge is found to exceed the qualified privilege to which the supervisor is entitled as an officer or director. *Id.* at 518. This court has also found that, in the absence of evidence of bad faith, fraud, or improper means, there is no cause of action against an agent for breach of contract by a corporation. *Bossuyt v. Osage Farmers Nat'l Bank*, 360 N.W.2d 769, 778 (Iowa 1985); *see also* 45 Am.Jur.2d · *Interference* § 6, at 277 (1999) ("[A] corporation's officer or director generally cannot be held liable under a theory of tortious interference for causing the corporation to breach a contract, nor can

an agent be held liable for inducing his principal to breach a contract so long as he is acting within the scope of his authority."). Because Grimm alleges McAllister's actions were malicious, wanton, and pursued for an improper purpose, her claim may fall within the beyond-the-scope-of-the-agency exception to the rule that parties to a contract cannot tortiously interfere with that contract. These allegations are sufficient to survive a motion to dismiss because they allege McAllister was acting outside the scope of her agency, and thus in effect removed herself from the contract.

## IV. *The Federal Preemption Issue.*

■ Section 301 preempts state claims "founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 394, 107 S.Ct. 2425, 2431, 96 L.Ed.2d 318, 328 (1987) (quoting *Int'l Bhd. of Elec. Workers v. Hechler,* 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2167 n. 3, 95 L.Ed.2d 791, 801 n. 3 (1987)).

■ A. *The contract claim.* US West contends that the plaintiff's suit is preempted, even though it is not based directly on the CBA, because the scope of the CBA's "zipper" clause must be consulted to determine if a separate action may be maintained.

A zipper clause "seeks to close out bargaining during the contract term and to make the written contract the exclusive statement of the parties['] rights and obligations." The parties to a written contract typically want the writing to be the exclusive statement of what they have agreed to. A zipper clause conveys the message that this agreement contains the complete understanding of the parties. It zips up and closes their ne-

gotiations and announces there is no more to bargain about until next time. *Mt. Vernon Educ. Ass'n v. Illinois Educ. Labor Relations Bd.,* 278 Ill.App.3d 814, 215 Ill.Dec. 553, 663 N.E.2d 1067, 1070 (1996) (quoting *NLRB v. Tomco Communications, Inc.,* 567 F.2d 871, 879 (9th Cir. 1978) (alteration by court)).

The zipper clause contained in U.S. West's CBA stated:

The Agreements of August 13, 1989, between the Union and the Company, superseded any and all past practices, policies, or procedures, either oral or written, which existed between the parties prior to the date of those Agreements. This Agreement between the Union and the Company continues the effect of that understanding and will govern the relationship between the parties during its term. No modification to this Agreement shall be effective unless signed by the parties.

Here, U.S. West argues that the "contract" that Grimm claims was created by the employee handbook was entered into before the CBA became effective and, therefore, may not be enforced because the claim is preempted by the LMRA. U.S. West argues,

[a]t the very least, the Court would have to interpret the zipper clause in the CBA to determine if the CBA superseded any past policies or procedures established by the [employee handbook]. This alone renders the "resolution of [Grimm's] state law claims ... inextricably intertwined with and substantially dependent upon analysis of the terms of the [CBA]" such that Grimm's "claims are ... subject to the complete preemption doctrine."

(Citations omitted.)

We agree with the federal court, which ruled that the language of section 301 does

not sweep so broadly as to preempt all claims based on the employee manual. That court relied on *Caterpillar*, which noted that

> individual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee, and claims based upon them may arise under state law. Caterpillar's basic error is its failure to recognize that a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement.

482 U.S. at 396, 107 S.Ct. at 2431, 96 L.Ed.2d at 329–30.

In the present case, as in *Caterpillar*, the collateral contract is alleged to be implied from conduct, and therefore, "it is unclear whether an examination of the collective-bargaining agreement is truly required by [state] law," because " '[i]n pleading a cause of action on an agreement implied from conduct, only the facts from which the promise is implied must be alleged.' " *Caterpillar*, 482 U.S. at 395 n. 9, 107 S.Ct. at 2431 n. 9, 96 L.Ed.2d at 329 n. 9 (quoting *Youngman v. Nevada Irrigation Dist.*, 70 Cal.2d 240, 74 Cal.Rptr. 398, 449 P.2d 462, 466 (1969)).

■ In deciding whether the handbook "contract" here was "inexorably intertwined" with the CBA, we must remember first that the plaintiff is the "master of [her own] complaint." *Caterpillar*, 482 U.S. at 398–99, 107 S.Ct. at 2433, 96 L.Ed.2d at 331, and she may intentionally craft her petition to avoid the need to interpret the CBA. Also, U.S. West seeks to derail her suit at the petition stage through its motion to dismiss. In this respect, this case is analogous to federal courts' initial rulings on removal petitions,

which turn on whether section 301 preempts state court jurisdiction as a matter of law. In *Caterpillar* the Supreme Court ruled that a holding of preemption at the removal stage was premature:

> The fact that a defendant might ultimately prove that a plaintiff's claims are preempted under the NLRA does not establish that they are removable to federal court [on preemption grounds].

*Id.* at 398, 107 S.Ct. at 2432, 96 L.Ed.2d at 330–31. As the Court has noted, a plaintiff should be master of her pleadings, and a plaintiff

> may, by eschewing claims based on federal law, choose to have the cause heard in state court. When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option. But a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing. Congress has long since decided that federal defenses do not provide a basis for removal.

*Id.* at 399, 107 S.Ct. at 2433, 96 L.Ed.2d at 331 (footnote omitted).

We conclude the district court erred in ruling as a matter of law that Grimm's handbook claim is preempted by the LMRA.

■ B. *The tort claims.* The defendants contend, and the district court ruled, that the plaintiff's *tort* claims, as well as her contract claim based on the employee handbook, are preempted by the LMRA.

The test for LMRA preemption in a tort case is

> whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contract relationship, that law is pre-empted.

*Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206, 216–17 (1985).

*Allis–Chalmers* illustrates the type of tort case that is preempted by section 301. The CBA in that case provided for an internal "Joint Plant Insurance Committee" with authority to "resolve all disputes involving 'any insurance-related issues that may arise from provisions of the [Collective–Bargaining] Agreement.'" *Id.* at 204, 105 S.Ct. at 1907, 85 L.Ed.2d at 211 (alteration by court). In *Allis–Chalmers* the plaintiff claimed Allis Chalmers had ordered the company's workers' compensation carrier to periodically cut off his workers' compensation benefits. Lueck did not attempt to grieve the matter under the CBA. Instead, he filed a state tort claim for breach of the company's duty "to act in good faith and deal fairly" with his claim. The Wisconsin Supreme Court held his claim was not preempted by section 301 because that statute dealt with labor contracts, while Lueck's claim "was a tort claim of bad faith" and thus independent of the contract. The Wisconsin Supreme Court ruled the contract was "'irrelevant to the issue of whether the defendants exercised bad faith in the manner in which they handled Lueck's claim.'" *Id.* at 207, 105 S.Ct. at 1909, 85 L.Ed.2d at 212 (quoting *Lueck v. Aetna Life Ins. Co.,* 116 Wis.2d 559, 342 N.W.2d 699, 703 (1984)).

The Supreme Court held that, "[u]nder Wisconsin law, the tort intrinsically relates to the nature and existence of the contract, [and][t]hus the tort exists for breach of a 'duty devolv[ed] upon the insurer by rea-

sonable implication from the express terms of the contract,' the scope of which, crucially, is 'ascertained from a consideration of the contract itself.'" *Allis–Chalmers,* 471 U.S. at 216, 105 S.Ct. at 1914, 85 L.Ed.2d at 218 (quoting *Hilker v. W. Auto. Ins. Co.,* 204 Wis. 1, 235 N.W. 413, 415 (1931) (alteration by court)). The Court held that,

> when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law. This complaint should have been dismissed....

*Allis–Chalmers,* 471 U.S. at 220, 105 S.Ct. at 1916, 85 L.Ed.2d at 221 (citation omitted). In *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Supreme Court further refined the principles of section 301 preemption:

> [I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is preempted and federal labor-law principles—necessarily uniform throughout the nation—must be employed to resolve the dispute.

*Lingle,* 486 U.S. at 405–06, 108 S.Ct. at 1881, 100 L.Ed.2d at 418–19. The Court noted, however, that "'not every dispute ... tangentially involving a provision of a collective-bargaining agreement, is preempted by section 301[.]'" *Id.* at 413, n. 12, 108 S.Ct. at 1885, n. 12, 100 L.Ed.2d at 424, n. 12 (quoting *Allis–Chalmers,* 471 U.S. at 211, 105 S.Ct. at 1911, 85 L.Ed.2d at 206).

[11] We have already held plaintiff's contract claim is not preempted at this

stage in the proceedings because she is the master of her own complaint. We believe the reasoning there applies with equal force as to the plaintiff's tortious interference claim. As to plaintiff's intentional-infliction-of-emotional-distress claim, we note the case of *Keehr v. Consolidated Freightways of Delaware, Inc.*, 825 F.2d 133 (7th Cir.1987), presented facts similar to the present case. The issue was whether the plaintiff's state claim for intentional infliction of emotional distress was preempted by the LMRA. The court concluded this claim "revolve[s] around conduct by his employer that is not even arguably sanctioned by the labor contract." *Keehr*, 825 F.2d at 138 n. 6.

In rejecting the employer's preemption argument, the court said in *Keehr*,

[the employer] argues that Bruce's claims are preempted because he could have filed a grievance against [his supervisor] for using abusive language. The mere fact that Bruce might be able to grieve [his supervisor's] conduct under procedures provided in the collective bargaining agreement is not sufficient in itself to conclude that Bruce's tort claims are preempted. The crucial issue under *Allis–Chalmers* is not whether a claim can be taken through the grievance process but whether the state law tort claim being asserted purports to give meaning to the terms of the labor contract. [The employer] has not suggested that Bruce's claims are in any way derived from rights or duties provided for under the contract. Because the resolution of Bruce's tort claims in no way depends on an interpretation of the labor contract, we conclude that

Bruce's claims are not preempted by section 301.

*Keehr*, 825 F.2d at 137.

Similarly, the court in *Lightning v. Roadway Express, Inc.*, 60 F.3d 1551, 1557 (11th Cir.1995), held an employee's state claim for intentional infliction of emotional distress was not preempted because the claim "does not implicate the provisions of the collective-bargaining agreement." *See also Knafel v. Pepsi–Cola Bottlers of Akron, Inc.*, 899 F.2d 1473, 1483 (6th Cir. 1990) ("This tort claim [for emotional distress] . . . does not require an interpretation of the labor contract.").

We conclude the resolution of Grimm's suit for intentional infliction of emotional distress is not, as a matter of law, preempted by the LMRA and therefore reverse the district court on that issue.

### V. *Preemption by Iowa Civil Rights Statute.*

■ The defendants argue that Grimm's intentional-infliction-of-emotional-distress claim against McAllister is also preempted by the Iowa Civil Rights Act, Iowa Code ch. 216, even though the statute does not apply to sexual orientation. *See Sommers v. Iowa Civil Rights Comm'n*, 337 N.W.2d 470, 474 (Iowa 1983) (holding the Iowa Civil Rights Act does not make transsexuals a protected class). The defendants contend that, because the legislature has given a statutory remedy to some claimants, it has impliedly preempted the whole field and has thereby denied a remedy to all others. Thus, "with great timidity [the court] must defer to the legislature to establish the parameters of our common law as well [as statutory law]." *Eddy v. Casey's Gen. Store, Inc.*, 485 N.W.2d 633, 639 (Iowa 1992) (Larson, J., dissenting).

Grimm has not attempted to couch her claim as one for sexual orientation discrim-

ination but rather one for intentional infliction of emotional distress. She alleges:

34. Defendant McAllister's discriminatory and malicious actions as set forth above were outrageous and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.

35. Defendant McAllister intentionally or with reckless disregard of the consequences inflicted upon Plaintiff severe emotional harm and distress.

▆▆▆ The defendants assert these claims are merely disguised claims of sexual-orientation discrimination, and the "discriminatory and malicious actions" of McAllister must be interpreted as sexual-orientation discrimination. However, it takes a significant amount of interpolation to make Grimm's emotional-distress claim a sexual-orientation claim, especially when we consider that the issues arose at the petition stage on a motion to dismiss. We have said a petition need only give fair notice of the incident giving rise to the claim and the general nature of the claim presented. *Soike v. Evan Matthews & Co.,* 302 N.W.2d 841, 842 (Iowa 1981). Grimm could simply have alleged in general terms the elements of an intentional-infliction-of-emotional distress claim and survived a motion to dismiss. We cannot agree with the defendants that, at least at this preliminary stage, she has alleged a discrimination claim that is preempted by the civil rights statute. We therefore conclude the district court erred in dismissing Grimm's intentional-infliction-of-emotional-distress claim on the basis it was preempted by the Iowa Civil Rights Act.

## VI. *The Statute–Of–Limitations Argument.*

The defendants contend that all of Grimm's claims are untimely under our two-year statute of limitations. Grimm relies on our saving statute, Iowa Code § 614.10, providing:

If, after the commencement of an action, the plaintiff, for any cause *except negligence in its prosecution,* fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first.

(Emphasis added.)

▆▆▆ Grimm contends she was not negligent because she had a reasonable belief her suit in federal court (which was ultimately held to be untimely itself) was brought at a time when she reasonably believed the six-month statute of limitation on her LMRA claim did not begin to run until she learned from a lawyer that she had a cause of action. We cannot say as a matter of law on a motion to dismiss that Grimm was negligent in this respect.

## VII. *The Contract Claim.*

▆▆▆ Grimm claims U.S. West breached a contract based on the employee handbook. The defendants argue, and the district court held, that the employee handbook did not, as a matter of law, constitute a contract because of its specific disclaimers of any such role. Grimm argues that, for several reasons, including the placement of the disclaimers within the handbook, the contract was ambiguous. Again, we cannot say as a matter of law that the handbook did or did not constitute a contract. That issue will have to be resolved at a later stage of the case. We hold it was error to dismiss this claim under the defendant's preliminary motion.

## VIII. *Preemption by Iowa's Workers' Compensation Statute.*

▆▆▆ McAllister contends Grimm's claim for intentional infliction of emotional

distress is preempted by our workers' compensation statute, Iowa Code ch. 85, which they argue now covers a purely "mental/mental" injury. However, it is not clear that the case falls under that theory. Our cases have held coverage of a mental/mental injury requires a showing of both legal and medical causation. *See Brown v. Quik Trip Corp.*, 641 N.W.2d 725, 727 (Iowa 2002); *Dunlavey v. Econ. Fire & Cas. Co.*, 526 N.W.2d 845, 853–58 (Iowa 1995). It also must appear that the injury arose out of and in the scope of Grimm's employment. All these issues are clearly beyond the scope of a motion to dismiss.

## IX. *Conclusion.*

We hold the court erred in dismissing Grimm's claim for interference with a contractual relationship, her claim of a breach of the handbook "contract," and her claim of intentional infliction of emotional distress. We therefore reverse and remand.

**REVERSED AND REMANDED.**