Michael CHAPMAN and Terri Lynn Chapman, Plaintiffs,

v.

LABONE, a Missouri Corporation, and Labone, a Delaware Corporation, Defendants.

No. 4:01–CV–10565.

United States District Court, S.D. Iowa, Central Division.

Sept. 18, 2006.

994

Carlton G. Salmons, Gaudineer & Comito LLP, West Des Moines, IA, Jayson D. Nelson, Richard J. Dinsmore, Dinsmore Law Office PC, Omaha, NE, for Plaintiffs.

Chester C. Woodburn, III, Hansen, McClintock, Riley, Des Moines, IA, D. Faye Caldwell, Caldwell & Clinton, Houston, TX, for Defendants.

## ORDER

LONGSTAFF, District Judge.

THE COURT HAS BEFORE IT defendants' motion for summary judgment, filed

April 10, 2006. Plaintiffs responded May 26, 2006. Defendants submitted a reply June 8, 2006. On August 11, 2006, defendants submitted additional material in support of their motion.

Two other motions are also before the Court. On April 11, 2006, defendants filed a motion to strike plaintiffs' expert witness. Plaintiffs responded to this motion on June 23, 2006. Defendants also filed a motion to strike plaintiffs' summary judgment record and objections to unsubstantiated allegations on June 8, 2006. Plaintiffs resisted this motion on July 14, 2006. Defendants filed a reply July 20, 2006.

These matters are considered fully submitted.

## I. BACKGROUND

This case evolves out of a random drug test conducted on a sample of plaintiff Michael Chapman's urine. At the time, Chapman was employed by the Union Pacific Railroad Company ("Union Pacific") as a trainman. As such, he was required by federal law to submit to periodic, random testing for controlled substances.

Defendants LabOne, Inc., a Missouri Corporation, and LabOne, Inc., a Delaware Corporation (collectively "LabOne") are private laboratories certified by the Department of Health and Human Services ("HHS") to perform drug screens on certain transportation employees, including railroad employees. In August of 1999, Union Pacific was sending its samples to LabOne for testing.

On August 26, 1999, Chapman was selected for a random drug screen. LabOne returned a result of "substituted" "not consistent with normal human urine." As a result of this finding, Union Pacific terminated Chapman.

## II. MOTION TO STRIKE EXPERT WITNESS

■ Given the nature of the three pending motions, the Court must first address LabOne's motion to strike Chapman's expert witness, Dr. Vina Spiehler, Ph.D., DABFT ("Dr. Spiehler"). Chapman retained Dr. Spiehler to investigate LabOne's handing and testing of his urine sample. LabOne claims that Dr. Spiehler is unqualified to render an expert opinion in this case, and that her opinion is untrustworthy and unreliable. *See* Def. Br. in Supp. of Mot. to Strike Expert Witness at 5, 8.

Chapman has the burden of establishing the admissibility of Dr. Spiehler's testimony. *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir.2001). "In order to be admissible, expert testimony must be both relevant to a material issue and reliable." *Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1120 (8th Cir.2006). That said, Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert testimony, is a rule of "admissibility rather than exclusion." *Lauzon*, 270 F.3d at 686 (internal quotations omitted).

■ Under Rule 702, proposed expert testimony must meet the following three prerequisites: (1) "evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact"; (2) the proposed expert witness must be "qualified to assist the finder of fact"; and (3) the proposed evidence "must be reliable or trustworthy in an evidentiary sense so that if the finder of fact accepts it as true it provides the assistance the finder of fact requires." *Lauzon*, 270 F.3d at 686 (internal citations omitted).

### A. Dr. Spiehler's Knowledge and Experience

LabOne claims that Dr. Spiehler lacks the knowledge and experience to testify

regarding LabOne's testing of Chapman's urine sample. In particular, LabOne argues that Dr. Spiehler has no personal experience running or working in an HHS certified laboratory, and that she is not familiar with industry practice in August 1999.

Dr. Spiehler received her Ph.D. in Pharmacology and Toxicology from the University of California, Irvine School of Medicine in 1978.[1] In addition to her Ph.D., Dr. Spiehler holds a Master's Degree in Analytical Chemistry and a Bachelor's Degree in Chemistry. In 1984, she became a Diplomate of the American Board of Forensic Toxicology.

Since 1989, Dr. Spiehler has been a lab inspector for the Department of Health and Human Services' National Laboratory Certification Program, the American Board of Forensic Toxicology's (ABFT) Forensic Toxicology Laboratory Accreditation Program, and the College of American Pathologists' Laboratory Certification Program. Dr. Spiehler also serves as a lecturer for California State University's Extension Forensic Sciences Certificate Program and the California Criminalistics Institute. During her career, Dr. Spiehler has authored or co-authored more than 100 articles, many of which focus on laboratory drug testing. Since 1999, Dr. Spiehler has testified and/or been retained in more than 100 cases.

The Court finds that Dr. Spiehler possesses the education and training necessary to render an opinion regarding appropriate procedures for testing a urine sample. Dr. Spiehler is certified by HHS to inspect laboratories, such as LabOne, which perform federally-mandated occupational drug testing. It would be illogical to conclude, as LabOne argues, that Dr. Spiehler is qualified to inspect a laboratory to determine compliance with HHS regulations for the purpose of certification, but not for litigation.

**B. Dr. Spiehler's Opinion in this Case**

The Court must also ensure that an expert opinion will be helpful to the jury in reaching its ultimate determination, and that the expert confines the scope of his or her opinions to areas of his or her expertise. *See Wheeling*, 254 F.3d at 715. Here, the parties do not dispute that an expert opinion is critical to the jury's understanding of Chapman's allegations. Furthermore, as discussed above, Dr. Spiehler is the type of expert who would ordinarily be qualified to render an opinion regarding the proper technique for employment related drug testing.

■ In her report, Dr. Spiehler opined that:

> [Chapman's specimen] was more likely than not **dilute,** that is, it had a creatinine concentration that was below the range normal for urine from human males. The data supplied for [Chapman's specimen] by LabOne do not support the report that the specimen was not human urine and this was not what was reported for the specimen. The data also do not support that the specimen was substituted to a degree of scientific certainty.

Def.App. in Supp. of Mot. to Strike Expert Witness at 3 (bold in original). In her deposition, Dr. Spiehler expanded on this opinion by testifying that it is more likely than not that Chapman's specimen fell within the range defined by HHS as "substitute." Def.App. in Supp. of Mot. to Strike Expert Witness at 72, 83. That said, Dr. Spiehler continues to believe that

---

1. Unless otherwise indicated, all information regarding Dr. Spiehler's education and background is taken from her Curriculum Vitae.

LabOne's procedures make it impossible to render this opinion to "a scientific certainty." Def.App. in Supp. of Mot. to Strike Expert Witness at 83.

Dr. Spiehler's opinion is one that may be helpful to the jury in assessing LabOne's liability. Furthermore, Dr. Spiehler confines her opinion to the areas of her expertise—toxicology and forensic toxicology.

### C. The Reliability and Trustworthiness of Dr. Spiehler's Opinion

■ The Court is also required to ensure that expert testimony is reliable and trustworthy in an evidentiary sense. *Lauzon*, 270 F.3d at 686. LabOne claims that Dr. Spiehler's opinion is both untrustworthy and unreliable. Def. Br. in Supp. of Mot. to Strike Expert Witness at 8.

In its brief, LabOne highlights many problems with the underlying foundation of Dr. Spiehler's opinion. For example, Dr. Spiehler makes several assertions in her report, which were repeated at her deposition, that are based on her memories from depositions and other documents she reviewed approximately five years prior to writing her report. *See* Spiehler Report at 2; Def.App. in Supp. of Mot. to Strike Expert Witness at 20, 25, 28, 30, 31, 55, 83 (recounting information based on her memory). LabOne also questions the accuracy of Dr. Spiehler's memories, and accordingly the reliability of her opinions. Def. Br. in Supp. of Mot. to Strike Expert Witness at 9–11.

■ While the Court appreciates LabOne's concerns about the reliability of Dr. Spiehler's opinion, the Eighth Circuit has repeatedly held that the factual basis of an expert's opinion is generally a question to be considered by the jury in determining what weight should be accorded to the opinion, and not by the Court in evaluating admissibility. *Margolies*, 447 F.3d at 1120–1121; *First Union Nat'l Bank v. Benham*, 423 F.3d 855, 861 (8th Cir.2005);

*Marvin Lumber & Cedar Co. v. PPG Indus.*, 401 F.3d 901, 916 (8th Cir.2005). Unless an expert's testimony is "so fundamentally unreliable that it can offer no assistance to the jury, . . ., the factual basis of the testimony goes to the weight of the evidence." *Larson v. Kempker*, 414 F.3d 936, 940–941 (8th Cir.2005) (quoting *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir.2004)); *see also Margolies*, 447 F.3d at 1121.

As the notes regarding the 2000 amendments to Rule 702 explain, even with the Court's gatekeeping function, "rejection of expert testimony is the exception rather than the rule." Fed.R.Evid. 702. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 595, 113 S.Ct. 2786. Accordingly, LabOne's motion to exclude the testimony of plaintiff's expert witness Dr. Spiehler is denied.

### III. MOTION TO STRIKE RECORD AND ALLEGATIONS

■ LabOne also moves to strike certain evidence and arguments submitted by Chapman in his resistance to LabOne's motion for summary judgment. LabOne's motion can be divided into three types of objections: (1) LabOne objects to Dr. Spiehler's affidavit and requests that it be stricken; (2) LabOne objects because Chapman's brief in resistance to the motion for summary judgment is not in accordance with the local rules; and (3) LabOne objects to assertions made in Chapman's brief. Def. Br. in Supp. of Mot. to Strike Evidence at 3.

### A. Dr. Spiehler's Affidavit

LabOne makes several objections to Dr. Spiehler's affidavit. First, LabOne con-

tends that Dr. Spiehler is not a competent expert witness. As explained above, the Court finds that Dr. Spiehler is a competent expert witness, and will not strike her affidavit for that reason.

LabOne's additional objections are: (1) Dr. Spiehler failed to attach material referenced in her affidavit as required by Rule 56(e); (2) that her affidavit contains opinions not contained in her report in violation of Rule 26(a)(2)(B); and (3) that her affidavit contains conclusory statements. For ease of discussion, the Court will examine these issues together.

The Court finds no merit in LabOne's objections to paragraphs 1, 2, 3 and 4 of Dr. Spiehler's affidavit. These paragraphs describe Dr. Spiehler's background and personal knowledge of this case; therefore, they are permissible. Similarly, paragraphs 5, 8 and 10 will not be stricken. The Court is generally aware of Dr. Spiehler's opinion and does not believe that this litigation would be furthered by striking these paragraphs or requiring plaintiff to submit supporting documentation.

Paragraphs 6, 7 and 9 contain information which must be stricken, however. First, paragraph 6 expresses an opinion not contained in Dr. Spiehler's expert report. Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires that an expert report contain a complete statement of his or her opinions and the reasons for those opinions. In her report, Dr. Spiehler uses the phrase "scientific certainty," and she also refers to the federal government Substance Abuse and Mental Health Service Administration (SAMHSA) program. Spiehler Report, Def.App. in Supp. of Mot. for Summ. J. at 1–3. The report does not express Dr. Spiehler's opinion that the SAMHSA program required a determination to a scientific certainty, however. See Spiehler Report, Def.App. in Supp. of Mot. for Summ. J. at 1–3. Nor does her report (or affidavit)

include the basis or reasoning for such an opinion. Because the opinion was not in her report and therefore violates Rule 26(a)(2)(B), paragraph 6 is stricken from the affidavit.

Paragraph 7 must be stricken for the same reasons as paragraph 6. Paragraph 7 again refers to the "required degree of scientific certainty," an opinion not rendered in Dr. Spiehler's report. Furthermore, paragraph 7 explicitly references documents and data not attached to the affidavit. Spiehler Affidavit at ¶ 7. When an affiant attempts to rely on a written document, the affiant's interpretation of the document is not sufficient. *N.D. State Univ. v. United States*, 255 F.3d 599, 608 (8th Cir.2001). The document itself must be attached to the affidavit. *Id.* Consequently, paragraph 7 will be stricken.

Finally, paragraph 9 must be stricken. Paragraph 9 refers again to information and conclusions not mentioned in Dr. Spiehler's report. Furthermore, in response to the motion to strike evidence, Chapman submitted an excerpt of the deposition of Michael Peat, Ph.D. In her affidavit, Dr. Spiehler asserts that she is relying on this testimony to support her conclusions in paragraph 9. Dr. Peat's deposition does not support the assertions made in Dr. Spiehler's report. For example, in her report, Dr. Spiehler claims Dr. Peat testified that a former LabOne employee, Alan Davis, claimed to have a Ph.D. when he did not. Dr. Peat testified that he claimed to have a Bachelor's Degree. Dr. Spiehler also asserts that Mr. Davis falsified records, but no mention of this is made in Dr. Peat's testimony and no further support is provided by Chapman or Dr. Spiehler. To the contrary, Dr. Peat stated that there were no other problems with Mr. Davis. Accordingly, paragraph 9 is stricken from Dr. Spiehler's affidavit.

### B. Form of Chapman's Brief

Next, LabOne objects because Dr. Spiehler's report is not properly authenticated, and therefore LabOne argues that the citations made to Dr. Spiehler's report throughout Chapman's brief should be disregarded.[2] Even accepting LabOne's argument as true, the Court will consider Dr. Spiehler's report for purposes of summary judgment.

### C. Assertions Made in Chapman's Brief

LabOne makes two types of objections to assertions made in Chapman's brief.[3] First, LabOne objects to various statements made in the brief which are not accompanied by a citation to the record. Second, LabOne objects to numerous statements that contain citations that LabOne argues fail to accurately support the statements made in the brief.

■ The Court finds that it is unnecessary to conduct a line by line analysis of what LabOne deems "unsubstantiated assertions." Many of these same facts are enumerated in Chapman's Statement of Additional Material Facts and contain a citation in that context. The Court notes, as pointed out by LabOne, that "the court is under no obligation to accept factual contentions of the party opposing summary judgment that are not supported by citation to the record." *United States v. Findett Corp.,* 220 F.3d 842, 848 n. 5 (8th Cir.2000). Accordingly, in evaluating the facts for purposes of summary judgment,

the Court will consider only those facts which contain support in the record. That said, the Court will not strike portions of Chapman's brief for failure to cite to the appendix.

LabOne's second type of objection is what LabOne deems "incorrectly substantiated assertions." Def. Br. at 14. For these objections, LabOne claims that the cited material does not actually support the information in the brief. As explained above, the Court will not consider any fact that is not properly supported by the record. Accordingly, for those assertions that contain a citation that does not properly support the alleged fact, the Court will not consider that fact in making its summary judgment determination. Counsel may trust that the Court has carefully reviewed all cited documents in rendering its order to ensure that they do in fact support the assertions made in briefs and statements of facts. The facts that the Court accepts for purposes of summary judgment are discussed below.

## IV. MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Walsh v. United States,* 31

---

2. LabOne also objected to the form in which Chapman's brief cited to the appendix. Chapman has since submitted a revised brief using the correct form of citation. Accordingly, this objection has been resolved.

3. With respect to both types of objections, the Court finds it peculiar that LabOne has moved to strike statements made in Chapman's brief and not the assertions put forth in Chapman's Statement of Additional Material

Facts. In the future, the appropriate course for such objections would be to move to strike assertions made in a parties statement of material fact. Many of the objections made by LabOne are to sections of Chapman's brief more accurately characterized as argument than factual assertions. Striking sections of a party's brief would require the Court to parse a factual assertions from the argument properly contained in a brief.

F.3d 696, 698 (8th Cir.1994). The moving party must establish its right to judgment with such clarity there is no room for controversy. *Jewson v. Mayo Clinic*, 691 F.2d 405, 408 (8th Cir.1982). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

B. Facts Relating to Motion for Summary Judgment

The following facts are either undisputed or taken in the light most favorable to plaintiff. In August 1999, Chapman was employed as a trainman for Union Pacific. As a trainman, he was required by federal law to submit to random, periodic tests for controlled substances, and on August 26, 1999, was selected to submit a urine sample for a random test.

Chapman consumed approximately 1 1/4 gallons of water prior to reporting for duty the day his sample was taken. He reported that this was a normal amount of water for him to consume. Once at the collection site, Chapman drank more water at the request of the collection site worker to "speed up" the process. Chapman reported that he drank approximately 8 bottles of water in the hour and 45 minutes from the time he reported to the site until he gave his sample.

At the time Chapman provided his sample, it was found to be within the temperature range of normal human urine. Furthermore, the individual collecting the sample did not report any unusual behavior by Chapman.

Chapman's sample was received by LabOne on August 28, 1999 and identified by specimen number 08469166—not Chapman's name. LabOne conducted an initial testing on a portion of Chapman's sample (aliquot) on Olympus Model 5200 Instrument # 1 on August 28, 1999. From this test, LabOne reported that the creatinine measured 4 mg/dL.[4] The specific gravity was also tested and reported at 1.000. On August 30, 1999, a second aliquot of the specimen was tested on Olympus Model 5200 Instrument # 4. On this second test, LabOne reported test results with a creatinine measure of 4 mg/dL. The specific gravity was also tested a second time and LabOne reported a result of 1.000.

The results were reported to Ben Gerson, MD, the designated Medical Review Officer, on August 30, 1999. The report was made on the Federal Custody Control Form and the box "test not performed" was marked. The remarks stated "Specimen substituted, not consistent with normal human urine." As a result of this report, Chapman was terminated from his employment with Union Pacific.

C. Law and Analysis

Chapman and his wife ("Mrs. Chapman"), filed this action against LabOne in August 2001 alleging: (1) negligence; (2) breach of contract; (3) defamation; (4) negligent misrepresentation; (5) fraudulent misrepresentation; (6) interference with existing business relationship; (7) interference with prospective business rela-

---

4. Although Chapman disagrees with the accuracy of the results, he admits that these were the results reported by LabOne. Pl. Resp. to Def. Statement of Material Facts at ¶ ¶ 11, 12.

tions; (8) intentional infliction of emotional distress; (9) invasion of privacy; and (10) loss of consortium.

### 1. Negligence

█ In order to prove his negligence claim, Chapman must establish four elements: (1) that LabOne owed Chapman a legal duty; (2) that LabOne breached that duty; (3) that the breach was the proximate cause of Chapman's injuries; and (4) that Chapman suffered damages. *Kolbe v. State,* 661 N.W.2d 142, 146 (Iowa 2003).

█ LabOne argues that it did not owe Chapman a legal duty. "The existence of a legal duty is a question of law." *Id.* In determining whether a legal duty exists, the Court must look at three factors: "(1) the relationship between the parties; (2) reasonable foreseeability of harm to the person who is injured; and (3) public policy considerations." *Id.* While it does not appear that Iowa has considered whether a drug testing company, retained by an employer, owes a legal duty to the individual whose sample it tests, other courts have concluded that such a duty exists. *See Stinson v. Physicians Immediate Care,* 269 Ill.App.3d 659, 664, 207 Ill.Dec. 96, 646 N.E.2d 930 (Ill.App.Ct. 1995) (examining elements similar to those in Iowa and concluding that the circumstances justified imposition of the duty); *Elliott v. Laboratory Specialists, Inc.,* 588 So.2d 175, 176 (La.Ct.App.1991) ("We find that drug testing laboratories (acting as independent contractors) owe a duty of care to the testee/employee, regardless of the contractual arrangement between the lab and the employer."); *Duncan v. Afton, Inc.,* 991 P.2d 739, 740 (Wyo.1999) ("a collection company owes a duty of care to an employee when collecting, handling, and processing urine specimens for the purpose of performing substance abuse testing.").

The factors outlines by the Iowa courts support the imposition of a legal duty on LabOne. LabOne was aware it was testing employee samples, and accordingly, could anticipate that harm could come to the employee as a result of LabOne's negligent behavior in processing the sample. Furthermore, public policy supports holding such labs accountable to the individual whose specimen they handle. *See Elliott,* 588 So.2d at 176. Thus, the Court finds LabOne owed Chapman a legal duty when testing his urine sample.

█ Chapman must also establish that LabOne breached a standard of care and that the breach was the cause of Chapman's harm. Although the question of causation is ordinarily for the jury to decide, it may be decided as a matter of law in exceptional cases. *Hayward v. P.D.A., Inc.,* 573 N.W.2d 29, 32 (Iowa 1997).

█ Under Iowa law, Chapman must prove two components to establish causation: (1) that "the defendant's conduct . . . in fact caused the plaintiff's damages (generally a factual inquiry) and (2) [that] the policy of the law [ ] require[s] the defendant to be legally responsible for the injury (generally a legal question)." *Id.* With respect to the factual inquiry, a plaintiff must show: "(1) that the harm would not have occurred but for the negligence of the defendant, and (2) that the negligence of the defendant was a substantial factor in bringing about the harm." *Id.* Thus, Chapman must provide some evidence of the likelihood that the test results would have been different had LabOne tested the sample in the manner Chapman claims would have been appropriate. *See Smeltzer v. Medtox Labs. & Burlington N. & Santa Fe Ry. Co.,* 2006 WL 2095468, 2006 U.S. Dist. LEXIS 51668 (D.Minn.2006) ("Without any evidence that Medtox's original test results were inaccurate, or that retesting the split samples

might yield different results, Plaintiffs cannot show that they were harmed by the 'premature' destruction of the split samples.").

■■■ While the element of causation may be established by circumstantial evidence, "it must [ ] rise above mere speculation." *Connecticut Fire Ins. Co. v. Gusman*, 259 Iowa 271, 276, 144 N.W.2d 333 (Iowa 1966). A plaintiff has met his or her burden of proof when the evidence is "such as to make plaintiff's theory of causation reasonably probable, not merely possible, and more probable than any other theory based on such evidence. It is not necessary for the testimony to be so clear as to exclude every other possible theory." *Id.* at 267–77, 144 N.W.2d 333.

Dr. Spiehler, plaintiff's own expert witness, testified in her deposition that she believed it was "more likely than not that [Chapman's] values were in [the substituted] range." Def.App. in Supp. of Mot. for Summ. J. at 126 (Spiehler Aff. 313:15–16). This statement came after Dr. Spiehler repeatedly made similar comments including one where she stated "I prefer to state that I think it was more likely than not in that low range of creatinine and specific gravity and was therefore reported—correctly reported as substituted according to the guidelines at that time." Def.App. in Supp. of Mot. for Summ. J. at 126 (Spiehler Aff. 312: 3–8). Dr. Spiehler qualified these statements by saying that failures in LabOne's testing process made it impossible to determine these results to a scientific certainty. Def.App. in Supp. of Mot. for Summ. J. at 126. There is not any evidence, however, that LabOne was required to meet a level of "scientific certainty" in its reporting.[5]

Chapman's theory of causation is presumably that LabOne's failure to implement certain controls (Program Document 37) lead to a false positive result and his corresponding job loss. There is no evidence, however, that LabOne's testing procedures actually produced a false positive result. On the contrary, Dr. Spiehler concedes that LabOne's testing was more likely than not correct. Chapman's theory of causation is speculative and accordingly presents a situation where summary judgment is appropriate on the basis of causation. *See Connecticut Fire*, 259 Iowa at 276, 144 N.W.2d 333; *see also Smeltzer*, 2006 WL 2095468, 2006 U.S. Dist. LEXIS 51668 ("A mere possibility of such causation is not enough." (internal citations omitted)).

## 2. Breach of Contract

■■■ The parties dedicate most of their argument on this issue to whether Chapman qualified as a third-party beneficiary of the contract between LabOne and Union Pacific. The Court need not reach this issue, however, because Chapman's claim for breach of contract fails for the same reason as his negligence claim.

In his complaint, Chapman alleges that LabOne breached its contract with Union Pacific and the breach was the proximate cause of his injuries. Complaint at 4. As discussed above, Chapman cannot establish the element of causation. Therefore, summary judgment is granted on the breach of contract claim.

## 3. Defamation

■■■ In order to meet his burden of proof on the claim of defamation, Chapman must prove by a preponderance of the

5. As discussed earlier, Dr. Spiehler attempted to insert her opinion that *SAMHSA* required such a level of certainty into her deposition and affidavit. This opinion was not included in her original report, however, and will not be considered in determining summary judgment.

evidence that LabOne "(1) published a statement that was (2) defamatory (3) of and concerning the plaintiff." *Taggart v. Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996). Typically, a plaintiff must also establish that the "statements at issue were made with malice, were false, and caused damage." *Kerndt v. Rolling Hills Nat'l Bank*, 558 N.W.2d 410, 418 (Iowa 1997). Malice, falsity and damage need not be shown, however, if the statement is one that qualifies as "defamatory per se." *Id.; Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996). "Defamatory statements affecting a person in his or her business, trade, profession, or office fall into this category." *Id.* LabOne's statement to Union Pacific that Chapman's urine test result was "substituted: not consistent with human urine" affected his employment as a trainman and accordingly qualifies as defamation per se. *See Huegerich*, 547 N.W.2d at 221. Taking the evidence in the light most favorable to Chapman, he meets the prima facie requirements for a defamation claim.[6]

LabOne argues that it is entitled to a defense of qualified privilege. In 2004, the Iowa Supreme Court refined the process of determining whether a defendant is entitled to qualified privilege. *Barreca v. Nickolas*, 683 N.W.2d 111, 118–123 (Iowa 2004). The first question is whether the occasion on which the statement was made was privileged and the second is whether that privilege was abused. *Id.* at 118. "Generally, the former question is for the judge; the latter for the jury." *Id.*

■■■■ A communication satisfies the first question if it is one "made by a person who has an interest in the subject matter to one who also has an interest in it or stands in such a relation that it is a reasonable duty or a proper one for the person to make the statement." *Higgins v. Gordon Jewelry Corp.*, 433 N.W.2d 306, 308 (Iowa Ct.App.1988) (quoting *Robinson v. Home Fire & Marine Ins. Co.*, 242 Iowa 1120, 49 N.W.2d 521 (1951)). Here, LabOne was retained, as an HHS certified laboratory conducting federally-mandated random drug tests, to test Chapman's sample and report the results to Union Pacific. Accordingly, the type of communication made by LabOne was privileged.

■■■■ The next question is whether LabOne abused the privilege. *Barreca*, 683 N.W.2d at 118. A qualified privilege is considered abused when a defamatory statement is published with "actual malice." *Id.* In *Barreca*, the Iowa Supreme Court clarified the definition of "actual malice" for purposes of a qualified privilege defense to a claim of defamation. *Id.* at 123. The Court adopted the test "which focuses on whether the defendant published the statement with a knowing or reckless disregard for the truth." *Id.*

■■■■ Chapman alleges that:
LabOne knew that testing procedures were deficient (knowing in non-compliance with PD 37) or should have known (incorrectly bracketing the low limit of creatinine, incorrectly calibrating their refractometers, and employing a lab director with false credentials and no proper education, background or experience).

Pl. Br. at 18. Neither of these allegations pertain to the veracity of LabOne's report to Union Pacific. Chapman has not ar-

---

**6.** As noted by LabOne, truth is an absolute defense to a claim of defamation. *Huegerich*, 547 N.W.2d at 221. The veracity of LabOne's report is disputed by the parties, however. The question is somewhat complicated in this case by the fact that the plaintiff's own expert witness opined that it is more likely than not that LabOne's results were correctly reported. Nonetheless, taking the facts in the light most favorable to the plaintiff, the Court cannot say as a matter of law that LabOne is entitled to the affirmative defense of truth.

gued that LabOne knew, or should have known that the actual statement made, the *test results,* was false. Rather, the evidence provided by plaintiff demonstrates that the test results were likely accurate. *See* Def.App. in Supp. of Motion for Summ. J. at 126 (Spiehler Depo). Chapman must demonstrate that LabOne "published the statement with a knowing or reckless disregard for the *truth.*" *Barreca,* 683 N.W.2d at 123 (emphasis added). "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.... The actual malice standard requires a high degree of *awareness of ... probable falsity.*" *Id.* (quoting *Caveman Adventures v. Press–Citizen Co.,* 633 N.W.2d 757, 762 (Iowa 2001)) (emphasis added).

The Court is mindful of the fact that questions of actual malice are typically reserved for the jury, *Barreca,* 683 N.W.2d at 118; however, in this case Chapman has failed to provide sufficient evidence to survive summary judgment. The facts do not support, and Chapman does not even argue in his brief, that LabOne acted in knowing or reckless disregard for the *truth,* even if the Court accepts Chapman's argument that they acted in disregard of PD37. Accordingly, LabOne's motion for summary judgment on the defamation claim is granted.

### 4. Negligent Misrepresentation

■ Chapman argues in his brief that LabOne should be held liable because "LabOne negligently provided false information 'for the guidance of others in their business transactions' for which plaintiff ultimately suffered." Pl. Resistance Br. to Summ. J. at 18. Iowa has adopted the Restatement (Second) of Torts § 552 with respect to the tort of negligent misrepresentation. *Beeck v. Kapalis,* 302 N.W.2d 90, 96–97 (Iowa 1981). Under the restatement:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. ... The liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Beeck,* 302 N.W.2d at 97 (quoting Restatement (Second) Torts § 552).

Even assuming Chapman could establish that LabOne supplied false information, the information was not supplied to Chapman and Chapman was not an individual "for whose benefit and guidance [LabOne] intend[ed] to supply the information." Thus, Chapman was not part of the special relationship which supports the imposition of a duty of care. *Sain v. Cedar Rapids Cmty. Sch. Dist.,* 626 N.W.2d 115, 124 (Iowa 2001) ("We recognize the former circumstances justify the imposition of a duty of care because a transaction between a person in the business or profession of supplying information and a person seeking information is compatible to a special relationship."). Consequently, Chapman

cannot meet the requirements of negligent misrepresentation and summary judgment is granted on this claim.

### 5. Fraudulent Misrepresentation

The only argument put forth by Chapman in his brief to support his claim of fraudulent misrepresentation pertains to the conduct of a former employee of LabOne, Alan. The only support for Chapman's assertions regarding Mr. Davis is contained in Dr. Spiehler's affidavit and those paragraphs have been stricken. Thus, there is no factual support for these allegations.

Furthermore, Chapman has not provided any evidence that LabOne knowingly misrepresented information with an intent to deceive or that Chapman acted upon the misrepresentations to his detriment. Because Chapman has failed to establish the required elements of fraudulent misrepresentation, *see City of McGregor v. Janett,* 546 N.W.2d 616, 619 (Iowa 1996), summary judgment is granted.

### 6. Interference with Existing or Prospective Business Relationship

■ In order to establish that LabOne interfered with Chapman's existing or prospective business relationship, Chapman must establish: (1) the existence of a valid business relationship or expectancy; (2) that LabOne knew of the relationship or expectancy; (3) that LabOne intentionally interfered with the relationship or expectancy; (4) that LabOne's action caused the breach of the existing relationship, or that the expectancy failed to materialize because of LabOne's conduct; and (5) that Chapman suffered damage as a result of the interference. *Grimm v. U.S. West Communs., Inc.,* 644 N.W.2d 8, 12 (Iowa 2002) (existing business relationship); *Nesler v. Fisher & Co.,* 452 N.W.2d 191, 197–98 (Iowa 1990) (prospective business relationship). In addition, in order to establish interference with a prospective business relationship, Chapman must establish that LabOne's "sole or predominant purpose" was to "financially injure or destroy the plaintiff." *Willey v. Riley,* 541 N.W.2d 521, 522 (Iowa 1995).

■ Chapman has failed to provide any evidence, or argument that LabOne acted to intentionally interfere with Chapman's relationship with Union Pacific. *See* Pl. Br. at 18–19. Chapman was not even identified by name when LabOne performed the drug screen. Accordingly, Chapman cannot maintain a cause of action for either interference with an existing business relationship or interference with a prospective business relationship. LabOne's motion for summary judgment on these claims is granted.

### 7. Intentional Infliction of Emotional Distress

■ In order to establish a prima facie case of intentional infliction of emotional distress Chapman must show: (1) outrageous conduct by LabOne; (2) that LabOne intentionally caused, or recklessly disregarded the probability of causing, the emotional distress; (3) Chapman suffered severe or extreme emotional distress; and (4) LabOne's outrageous conduct was the actual and proximate cause of the emotional distress. *Barreca,* 683 N.W.2d at 123 (citing *Fuller v. Local Union No. 106,* 567 N.W.2d 419, 423 (Iowa 1997)).

■ For conduct to be considered outrageous, it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Vaughn v. Ag Processing, Inc.,* 459 N.W.2d 627, 636 (Iowa 1990) (citing *Harsha v. State Sav. Bank,* 346 N.W.2d 791, 801 (Iowa 1984)). The only substantiated allegation Chapman makes against LabOne for outrageous conduct is that LabOne "chose their own testing methods and training procedures, e.g.

choosing to wait to implement PD 37 standards." Pl. Br. at 19.[7] Dr. Spiehler did not testify in her deposition that LabOne chose its own "testing method," rather, she testified that LabOne became deficient as soon as Program Document 37 was issued and their lab did not meet the new requirements. Def.App. in Supp. of Mot. for Summ. J. at 74. When asked, she could not provide an example of any lab that met the requirements by the time of Chapman's test, approximately one month after the issuance of PD 37. *Id.* Nor has Chapman provided evidence regarding the expected date of implementation of PD 37. LabOne's expert, Yale Caplan, Ph.D., D–ABFT ("Dr. Caplan")[8] stated that it was common in the industry for such changes to take 6 months to one year after the publication of a new program document. Def.App. in Supp. of Mot. for Summ. J. at 1185. As a matter of law, LabOne's conduct was not such that it would be regarded as "atrocious, and utterly intolerable in a civilized community." *Vaughn,* 459 N.W.2d at 636.

■ Additionally, Chapman cannot establish that LabOne's conduct was the cause of any emotional distress for the same reasons outlined in the negligence section above. Accordingly, LabOne's motion for summary judgment is granted on this claim.

### 8. Invasion of Privacy

■ Under Iowa law, an invasion of privacy action may be based on any of four distinct wrongs including, "(d) publicity that unreasonably places the other in a false light before the public...." *Anderson v. Low Rent Housing Comm'n,* 304 N.W.2d 239, 248 (Iowa 1981) (citing Restatement (Second) of Torts § 652A (1977)).

■ "An invasion of privacy claim involving placing a person in false light occurs when one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Kiesau v. Bantz,* 686 N.W.2d 164, 179 (Iowa 2004) (citing *Winegard v. Larsen,* 260 N.W.2d 816, 823 (Iowa 1977)).

■ The term "publicity" in an invasion of privacy claim is not the same as "publication" in a defamation action:

> 'Publication,' in [the defamation context], is a word of art, which includes any communication by the defendant to a third person. 'Publicity,' on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge....

---

7. Chapman also makes references to the employment of Mr. Davis and his qualifications (or lack of). As explained earlier, these allegations are not supported by the record, and will not be considered for purposes of summary judgment.

8. Yale Caplan, Ph.D., D–ABFT has a Bachelor's Degree in pharmacy and a Ph.D. in medicinal chemistry. He served on the original NIDA Laboratory Accreditation committee that developed the HHS–NIDA (now SAMHSA) guidelines. He has since served as a member of the HHS Drug Testing Advisory Board and as a consultant to HHS, SAMHSA and DOT. He has also served as the director of an HHS laboratory. He is board certified in forensic toxicology by the American Board of Forensic Toxicology and is currently the Board's President. Def.App. in Supp. of Summ. J. at 1179–1180.

Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

Restat.2d of Torts, § 652D. Chapman does not allege that LabOne communicated his test results to the public. Rather, the evidence demonstrates that LabOne informed Union Pacific of Chapman's test results and that Union Pacific terminated Chapman's employment. While Chapman's fellow employees may have deduced from his termination that he did not pass his drug test, the actions of Union Pacific and the reasoning of Chapman's fellow workers fail to meet the publicity requirement under the law.

 Furthermore, Chapman cannot establish that LabOne had knowledge or acted in reckless disregard as to the falsity of the allegedly publicized matter. *See Kiesau*, 686 N.W.2d at 179. As explained earlier with respect to the defamation claim, Chapman has not presented evidence that LabOne knew that the results it reported to Union Pacific were false, or that LabOne acted in reckless disregard to the falsity to the results. In fact, Chapman has not presented evidence that the results were false. Chapman cannot establish that LabOne placed him in a false light, or that it did so knowingly or with reckless disregard. Consequently, LabOne's motion for summary judgement is granted.

9. Mrs. Chapman's Loss of Consortium Claim

 Mrs. Chapman seeks compensation for loss of consortium because "[Mrs. Chapman] and her children will have to live with Mr. Chapman's loss of earning capacity." Pl. Response to Def. Statement of Material Facts at ¶ 2. In Iowa, "consortium damages are limited to compensation

for the loss of such intangible elements as company, cooperation, affection and aid," consortium is not intended to recover for pecuniary damages. *Fuller v. Buhrow*, 292 N.W.2d 672, 675 (Iowa 1980). Accordingly, Mrs. Chapman cannot recover for the loss she suffers due to the decline in Chapman's earning capacity.

 Furthermore, a loss of consortium claim is limited to certain defined relationships, such as the marital relationship. *See, e.g., Laws v. Griep*, 332 N.W.2d 339, 340 (Iowa 1983) (holding that unmarried co-habitants cannot recover loss of consortium). In August of 1999, when Chapman provided the urine sample, LabOne reported the results, and Chapman was terminated, he was not married to Mrs. Chapman. Accordingly, she would not be a "foreseeable plaintiff to whom [LabOne] owe[d] a separate duty of care." *Huber v. Hovey*, 501 N.W.2d 53, 57 (Iowa 1993) (quoting *Fuller*, 292 N.W.2d at 675). LabOne's motion for summary judgment on Mrs. Chapman's loss of consortium claim is granted.

V. CONCLUSION

Defendants' motion to strike plaintiff's expert witness is DENIED. Defendants' motion to strike certain evidence and unsubstantiated allegation is DENIED IN PART AND GRANTED IN PART. Defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiffs.