

# Missouri Court of Appeals
## Southern District

### In Division

TYLER PENDERGRAFT,    )
                      )
    Plaintiff-Respondent,    )
                      )
v.                    )    No. SD38189
                      )    Filed: October 3, 2024
JAMES RHETT MASON and )
JACE MASON,           )
                      )
    Defendants-Appellants.    )

### APPEAL FROM THE CIRCUIT COURT OF BARRY COUNTY

Honorable Jeffrey M. Merrell, Special Judge

**<u>AFFIRMED</u>**

Following a jury trial, defendants James Rhett Mason (Rhett) and his son, Jace Mason (Jace), appeal from a judgment in favor of plaintiff Tyler Pendergraft (Plaintiff) on his claims for assault and battery.[1]  At trial, Plaintiff testified, *inter alia*, that Jace beat him with a wooden axe handle on his face and head and that Rhett used another wooden object to break both his legs.  The jury completed two separate verdicts, awarding Plaintiff separate damage amounts for injuries caused by Jace and injuries caused by Rhett.  After the trial court entered judgment according to the jury's verdicts, Rhett and Jace

---

[1]  Because both defendants share the same surname, we refer to them individually by their first names for purposes of clarity.

(collectively, Defendants) filed a motion to amend the judgment to "merge the verdicts into one damage award in order to prevent a double recovery" for Plaintiff. The court denied the motion.

On appeal, Defendants contend the trial court erred by denying their motion to amend the judgment "because the jury's verdicts violate the doctrine of merger[.]" We disagree and affirm.

*Standard of Review*

We review a trial court's denial of a motion to amend the judgment for abuse of discretion. **Heckadon v. CFS Enters., Inc.**, 400 S.W.3d 372, 380 (Mo. App. 2013). A trial court abuses its discretion when its ruling shocks the sense of justice, shows a lack of consideration, and is obviously against the logic of the circumstances. **Williams v. City of Kansas City**, 641 S.W.3d 302, 332 (Mo. App. 2021); **Burrows v. Union Pac. R.R. Co.**, 218 S.W.3d 527, 533-34 (Mo. App. 2007). "If reasonable persons can differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion." **Wilkerson v. Prelutsky**, 943 S.W.2d 643, 648 (Mo. banc 1997); **Heckadon**, 400 S.W.3d at 380.

*Factual and Procedural Background*

In August 2014, Plaintiff was a high school senior. He began working for Rhett after school on Rhett's property feeding cows and cutting wood. On February 9, 2015, Plaintiff received a "Snapchat" communication from Jace asking Plaintiff to meet at Rhett's property to cut wood. When Plaintiff arrived and exited his truck, he saw Rhett operating a swivel loader, but Plaintiff did not see Jace. Rhett asked Plaintiff what he was doing, and Plaintiff said he was there to cut wood.

2

According to Plaintiff, as he walked toward the swivel loader, Rhett said: "Beat the hell out of him, Jace." Jace struck Plaintiff's left eye socket with an object that Plaintiff was pretty sure was a wooden axe handle. Jace continued to hit Plaintiff on his head and upper body. Rhett got off the loader and joined Jace, and both started kicking Plaintiff in the chest. They yelled at Plaintiff, saying that he was stealing diesel. Plaintiff denied stealing anything and begged them to stop.

Rhett then walked to the wood pile, picked up a wooden object, and said he was going to break Plaintiff's legs. Rhett proceeded to hit both of Plaintiff's legs until they snapped. It was then that the beating stopped, and Defendants began to walk away. Plaintiff asked Rhett to "please help" Plaintiff get in his truck, but Rhett said if Plaintiff couldn't leave, then Rhett was going to bury him. Defendants then left the area.

Plaintiff crawled to his truck and used his upper body to pull himself into the driver's seat. He had to physically use his hands to pick up his legs and set them inside the vehicle and to press down onto his left knee to engage the clutch to put the vehicle into gear. Then Plaintiff used his hand to press his right knee for the gas and "grinded the gears all the way to Cassville." He managed to call his stepfather to meet him at the emergency room. As Plaintiff approached the facility, he was able to roll his truck to a stop in a nearby bank parking lot. Plaintiff was spotted by his stepfather, who carried Plaintiff into the emergency room. Plaintiff couldn't remember much about what followed. By then, he could only see out of his right eye because his left eye was swollen shut. He reported his pain as a "ten plus" on a scale of one to ten.

According to Plaintiff's mother (Mother), hospital staff told her that both of Plaintiff's legs were broken, both ankles were broken, and his jaw and the orbital bone in his nose were cracked. Once Plaintiff was stable, he was transported by ambulance to

Springfield Mercy Hospital, where he underwent multiple surgeries on both of his legs, and later, his nose. The injuries to his right leg were worse than the injuries to his left.

To treat the injuries to Plaintiff's right leg, he had five surgeries. This included the placement of a rod, pins, screws and staples. The rod placement is permanent. The screws were removed from his knee in July 2015, and from his ankle over seven years later. The surgeries and procedures were painful. When Plaintiff complained to medical personnel of pain, he was given pain medication, but the medication had little effect on his pain.

In March 2016, Plaintiff filed a lawsuit against Rhett and Jace. In Plaintiff's six-count petition for damages, he alleged separate counts against Rhett for assault and battery (Counts 1 and 2), and against Jace for assault and battery (Counts 3 and 4). Plaintiff also alleged two additional counts for punitive damages against Rhett and against Jace (Counts 5 and 6). The matter was tried to a jury in May 2023. Witnesses included Plaintiff and Mother, who testified to most of the facts detailed above.

At the time of trial, Plaintiff testified about the ongoing consequences of his injuries. He still suffered pain in his right leg, ankle and knee, and he could not fully bend his right knee. He avoided walking and had "a pretty good limp." One of his nostrils was closed, and he could only breath through the other nostril. His jaw often "popped" when he ate, causing him pain.

Mother testified that, beginning when Plaintiff was in the Cassville ER on February 9, 2015, and through his multiple surgeries, he had complained of pain and continued to do so as of the date of the trial eight years later. When all of Mother's grandchildren came over and sat on the floor to play games, Plaintiff could not get down on his knees to join them. Plaintiff tried to help Mother with her cattle, but he could not do what he used to do and complained of pain.

4

At the instruction conference, Plaintiff's counsel submitted separate verdict-directing instructions and verdict forms against Rhett and against Jace. Defendants' counsel objected to the separate instructions based on possible doubling of potential damages, but the court overruled Defendants' motion. The trial court decided to give an instruction package applying to each of the Defendants.

Instruction Nos. 8-13 applied to Verdict A against Rhett for injuries caused by his conduct. Instruction No. 9, which was the assault verdict-directing instruction for Rhett, stated:

INSTRUCTION NO. 9

Your verdict must be for [P]laintiff if you believe:

First, defendant [Rhett] instructed his son [Jace] to strike Plaintiff and made statements to Plaintiff that he was going to break his legs with the intent to cause [P]laintiff bodily harm and

Second, defendant [Rhett] thereby caused [P]laintiff to be in apprehension of bodily harm or offensive contact.

Unless you believe that [P]laintiff is not entitled to recover by reason of Instruction Number 11.

Instruction No. 10, which was the battery verdict-directing instruction for Rhett, stated:

INSTRUCTION NO. 10

Your verdict must be for [P]laintiff if you believe:

First, defendant [Rhett] intentionally struck and hit and/or kicked [P]laintiff, and

Second, defendant [Rhett] thereby caused [P]laintiff bodily harm.

Unless you believe that [P]laintiff is not entitled to recover by reason of Instruction Number 11.

Instruction No. 12, which was the damages instruction for Rhett, stated:

5

INSTRUCTION NO. 12

If you find in favor of [Plaintiff] against [Rhett], then you must award [Plaintiff] such sum as you believe will fairly and justly compensate [Plaintiff] for any damages you believe he sustained.

Instruction Nos. 14-18 applied to Verdict B against Jace for injuries caused by his conduct. Instruction No. 15, which was the battery verdict-directing instruction for Jace, stated:

INSTRUCTION NO. 15

Your verdict must be for [P]laintiff if you believe:

First, defendant [Jace] intentionally struck and hit and or kicked [P]laintiff, and

Second, defendant [Jace] thereby caused [P]laintiff bodily harm.

Unless you believe that [P]laintiff is not entitled to recover by reason of Instruction Number 16.

Instruction No. 17, which was the damages instruction for Jace, stated:

INSTRUCTION NO. 17

If you find in favor of [Plaintiff] against [Jace], then you must award [Plaintiff] such sum as you believe will fairly and justly compensate [Plaintiff] for any damages you believe he sustained.

During Plaintiff's closing argument, his counsel asked the jury to award Plaintiff the following sums as damages: (1) medical bills of $68,115.21; (2) past and current pain and suffering from February 9, 2015, through the last day of trial, in the amount of $350,000; (3) future pain and suffering of $750,000; (4) $10,000 for disfigurement and scarring; and (5) $12,000 for four months of lost wages. Those requested compensatory damages totaled $1,190,115.21. Counsel suggested that the jurors put the sum of $1,190,115.21 in the compensatory damages blank on both Verdict A and Verdict B.

6

During jury deliberations, the jury asked: "Are they seeking the full amount from each defendant?" After a discussion with all counsel, the trial court answered the question by stating: "The Court is not permitted to answer your question. You should be guided by the evidence as you remember it and the instructions provided to you."

The jury returned a separate Verdict A and Verdict B in favor of Plaintiff and against Rhett and Jace for different compensatory damages amounts. Verdict A against Rhett awarded Plaintiff compensatory damages in the amount of $500,000. Verdict B against Jace awarded Plaintiff compensatory damages in the amount of $221,115.21. The jury declined to award any punitive damages.

Based upon a pretrial agreement, both Rhett and Jace requested that they receive credit for restitution previously paid toward any verdict the jury returned in Plaintiff's favor. Rhett requested a credit of $100,000, and Jace requested a credit of $4,000. The trial court granted both requests and entered a final judgment awarding Plaintiff $400,000 in damages against Rhett and $217,115.21 in damages against Jace.

Thereafter, Defendants filed a motion to amend the judgment. In that motion, Defendants argued that the damages awarded to Plaintiff against each of the Defendants were duplicative and should be merged into a single damage award – the higher of the two awards – to prevent a double recovery. After hearing arguments on the matter, the trial court denied the motion. The court determined the damage awards should not be merged, based on: (1) the jury's question about damages; (2) the court's response advising the jury to be guided by the evidence and to follow the instructions; and (3) the fact that the jury's verdict against Jace was not identical to the jury's verdict against Rhett. As the trial court explained:

> Had the jury wished for its verdict to be $500,000.00 in favor of Plaintiff,
> as Defendants contend in their post-trial motion, the jury presumably would

7

have either 1) returned a verdict against only one of the two [D]efendants in the sum of $500,000.00, or 2) would have returned identical verdicts in the amount of $500,000.00 against both [D]efendants.

Defendants appeal from that ruling.

*Discussion and Decision*

In Defendants' sole point on appeal, they contend the trial court erred by denying the motion to amend the judgment because "the evidence presented at trial did not differentiate between the damages attributable to [Rhett] and the damages attributable to [Jace] and, therefore, [Plaintiff] impermissibly received a double recovery." According to Defendants, "the jury's verdicts violate the doctrine of merger." We disagree.

> The doctrine of merger prevents a party from being compensated twice for the same injury. Although a single transaction may invade more than one right, and a plaintiff is entitled to proceed on numerous theories of recovery, he is not allowed to be made more than whole or receive more than one full recovery for the same harm. A plaintiff must establish a separate injury on each theory presented at trial. Thus, if the damages asserted in two causes of action are the same, the damage awards should be merged.

*Heckadon v. CFS Enters., Inc.*, 400 S.W.3d 372, 380-81 (Mo. App. 2013) (internal brackets, quotation marks and citations omitted). For the following reasons, the merger doctrine has no application in this case.

In support of Defendants' argument that the merger doctrine applies, they rely on *Heckadon*, but that case is factually distinguishable. In *Heckadon*, the western district of this Court found that the two plaintiffs there submitted the same benefit-of-the-bargain damage instruction with respect to each defendant, with each instruction requesting the jury "to assess the damages flowing from the *same injury*[.]" *Heckadon*, 400 S.W.3d at 381 (italics added). The Court reversed the judgment and remanded the case to the trial court to enter an amended judgment merging the two identical damage awards into a single award. *Id*.

8

Here, unlike *Heckadon*, the jury was not asked to assess damages from the same injury. Instruction Nos. 8-13 and Verdict A against Rhett, and Instruction Nos. 14-18 and Verdict B against Jace, directed the jury to award damages for separate claims based on *different* conduct causing *different* injuries. Further, the jury arrived at *different* amounts for each claim.

The case at bar is much more similar to **Williams v. City of Kansas City**, 641 S.W.3d 302, 332-33 (Mo. App. 2021). In **Williams**, the plaintiff submitted instructions on a retaliation claim and a hostile-work-environment claim. The western district of this Court decided the **Heckadon** opinion was factually distinguishable for the following reasons:

> Unlike *Heckadon*, the verdict director for the retaliation claim … and the verdict director for the hostile work environment claim … contain *different* elements and require the jury to find *different* injuries. Furthermore, separate damage instructions directed the jury to award damages for *different* claims and *different* injuries. In addition, the jury awarded *different* amounts for each claim.

**Williams**, 641 S.W.3d at 332-33 (footnote omitted, italics in original).

Like the **Williams** court, we conclude that **Heckadon** and the doctrine of merger do not apply. Plaintiff sought damages for injuries to both legs caused by Rhett in Verdict A, and Plaintiff sought damages for different injuries to his head and upper body caused by Jace in Verdict B. Ample evidence supports the jury's separate verdicts against each of the Defendants. With respect to Jace, Plaintiff testified at length that Jace came from behind him and struck him with a wooden axe handle across his face and eye. Plaintiff's testimony, which was supported by admitted medical records, established that he suffered a broken nose, fractured orbital bone, and cracked jaw. He continued to suffer pain from these injuries and had problems breathing. As for the separate verdict against Rhett, Plaintiff also testified at length that Rhett obtained a wooden object, told Plaintiff he was going to break his legs, and hit Plaintiff's legs until they snapped. According to Plaintiff

9

and Mother, Plaintiff's injuries and many surgeries that followed caused much pain and continued to do so at the time of trial. Plaintiff's counsel asked for a greater sum to be awarded, but "Missouri case law recognizes that the suggestion of a damages award during closing argument is not evidence and is not binding on the jury." *Stewart v. Partamian*, 465 S.W.3d 51, 58 (Mo. banc 2015). Indeed, the jury did not follow counsel's suggestion with respect to damages. Instruction Nos. 12 and 17, the damages instructions, required the jury to independently assess what sum would fairly and justly compensate Plaintiff for his injuries with respect to each of the Defendants.

Defendants nevertheless argue that the evidence presented at trial did not differentiate between the damages attributable to Rhett and the damages attributable to Jace. Given the jury's question, and the trial court's response, we agree with the trial court that the jury reviewed the evidence, followed the instructions, and returned separate verdicts against each of the Defendants for injuries caused by their conduct. *See id.*[2]

For all these reasons, the trial court's decision not to merge the damages does not shock our sense of justice, show a lack of consideration, and is not obviously against the logic of the circumstances. *Williams*, 641 S.W.3d at 333. Finding no abuse of discretion, Defendants' point is denied.

The judgment of the trial court is affirmed.

---

[2] Similarly, there is no double recovery in this case. Defendants argue that a double recovery occurred by relying on *Kincaid Enters., Inc. v. Porter*, 812 S.W.2d 892 (Mo. App. 1991), but that case is also factually distinguishable. Unlike the case at bar, the plaintiff in *Kincaid*, suffered only one monetary injury but prevailed on two theories of recovery – breach of contract and fraud. *Id*. at 900. The western district of this Court reversed and remanded to enter judgment on the higher of the two verdicts because, "Kincaid was entitled to be made whole by one compensatory damage award, but not to the windfall of a double recovery." *Id*. Here, as established previously, Plaintiff based his claims on different injuries caused by different conduct on the part of each of the Defendants.

JEFFREY W. BATES, JUDGE – OPINION AUTHOR

JENNIFER R. GROWCOCK, JUDGE – CONCUR

MATTHEW P. HAMNER, JUDGE – CONCUR